OPINION OF THE COURT
Robert J. Lunn, J.
This is an action to recover a subrogated property damage claim of the plaintiff, Dorothy Miller. The parties have submitted the matter on stipulated facts to be determined by the court as a matter of law. All of the material allegations of the complaint have been admitted and can be summarized as follows: On August 27, 1994, in the Town of Brighton, New York, the defendant, Michael Sullivan, negligently operated a motor vehicle so as to cause it to collide with the plaintiff’s automobile. The accident resulted in $3,723.46 of property damage to plaintiff’s vehicle. Plaintiff’s subrogee is entitled to recover damages in that amount. The vehicle operated by Sullivan was owned by Hertz Corp. (Hertz) which, at the time of the accident, had leased it to third-party defendant, Glenn Atias. Sullivan drove the vehicle with the consent of Mr. Atias.
The parties have asked the court upon these stipulated facts to determine which defendant is liable for these damages by resolving the rental contract between Hertz and Atias, the insurance contract between Sullivan and his carrier Allstate, while at the same time applying the statutory provisions of sections 370 and 388 of the Vehicle and Traffic Law.[1] Essentially, this is a request for declaratory relief deciding the cross claims of Sullivan and Hertz. The real parties in interest are Hertz, the owner of the vehicle, and Allstate, the liability insurance carrier for the operator, Sullivan.
*692 Atias, under the terms of his rental contract with Hertz, had the option of procuring primary insurance coverage from Hertz and paying a higher rental or declining it and paying less rental. Atias opted for the latter. He thereupon became bound by the terms of paragraph 10 (b) of the rental agreement.
Paragraph 10 of the agreement provides:
"10. LIABILITY PROTECTION.
"PARAGRAPH (a) APPLIES IF THE PROVISIONS OF YOUR CDP NUMBER OR RATE PLAN INCLUDES THE EXTENSION BY HERTZ OF LIABILITY PROTECTION.
"(a) Within the limits stated in this paragraph, Hertz will indemnify, hold harmless and defend you and any authorized operators from and against liability to third parties, which BY DEFINITION EXCLUDES ANY OF YOUR OR ANY AUTHORIZED OPERATOR’S FAMILY MEMBERS RELATED BY BLOOD, MARRIAGE OR ADOPTION RESIDING WITH YOU OR THEM FOR BODILY INJURY INCLUDING DEATH AND PROPERTY DAMAGE. THE LIMITS OF THE PROTECTION, INCLUDING OWNER’S LIABILITY, ARE THE SAME AS THE MINIMUM LIMITS REQUIRED BY THE AUTOMOBILE FINANCIAL RESPONSIBILITY LAW OF THE JURISDICTION IN WHICH THE ACCIDENT OCCURS, UNLESS HIGHER LIMITS APPLY FOR THE CDP NUMBER RATE SHOWN ON THE RENTAL RECORD, IF THE ACCIDENT RESULTS FROM THE USE OF THE CAR AS PERMITTED BY THE AGREEMENT. (THE HERTZ OPTIONAL SERVICES BROCHURE AVAILABLE AT ANY RENTAL LOCATION SHOWS EACH STATE’S LIMIT). This will conform to the does not include 'uninsured motorist’, 'underinsured motorist’, 'supplementary no fault’ and any OTHER OPTIONAL COVERAGE TO THE EXTENT PERMITTED BY LAW, HERTZ AND YOU HEREBY REJECT THE INCLUSION OF ANY SUCH coverage. If such protection is imposed by operation of law, then the limits of such protection will be the minimum required for primary coverage by the law of the jurisdiction in which the accident occurred.
"PARAGRAPH (b) APPLIES FOR ALL OTHER RENTALS EXCEPT THOSE NOTED ABOVE IN PARAGRAPH 10(a).
"(b) IF YOU DO NOT PURCHASE LIABILITY INSURANCE SUPPLEMENT (LIS) (A SUMMARY OF LIS COVERAGE IS LOCATED ON THE BACK OF THIS AGREEMENT) AT THE COMMENCEMENT OF THE RENTAL AND AN ACCIDENT RESULTS FROM THE USE OF THE CAR, YOUR INSURANCE AND THE INSURANCE OF THE OPERATOR OF THE CAR WILL BE PRIMARY. THIS MEANS THAT HERTZ WILL NOT GRANT ANY DEFENSE OR INDEMNITY PROTECTION UNDER THIS PARAGRAPH IF EITHER YOU OR THE OPERATOR OF THE CAR ARE COVERED BY *693 ANY VALID AND COLLECTIBLE AUTOMOBILE LIABILITY INSURANCE, WHETHER PRIMARY, EXCESS OR CONTINGENT WITH LIMITS AT LEAST EQUAL TO THE MINIMUM REQUIRED BY THE APPLICABLE STATE FINANCIAL RESPONSIBILITY LAW. If NEITHER YOU NOR THE OPERATOR OF THE CAR HAVE SUCH INSURANCE, HERTZ WILL GRANT YOU AND ANY AUTHORIZED OPERATOR OF THE CAR LIMITED PROTECTION UNDER THE TERMS AND CONDITIONS STATED IN SUBPARAGRAPHS 10(a) ABOVE AND 10(c) BELOW.
"(c) You and all operators will indemnify and hold Hertz, its agents and employees harmless from and against any loss, liability and expense in excess of the limits stated herein or beyond the scope of the protection provided for above, if any arising from the use or possession of the car by You or any operators with Your, his or her permission.”
Allstate argues that paragraph 10 (b) is contrary to public policy, unlawful and void as a matter of law. It contends that the effect of this paragraph is to shift Hertz’s legal duty as owner to provide mandatory insurance coverage from Hertz to the renter. In advancing this argument, Allstate cites the provisions of section 388 of the Vehicle and Traffic Law and Morris v Snappy Car Rental (189 AD2d 115 [4th Dept 1993], affd 84 NY2d 21 [1994]). Additionally, Allstate argues that its contract with Sullivan is excess and not primary. The Allstate contract at page 7 provides that a "non-owned auto” is an "insured auto”. Sullivan was an insured person. The policy at page 9 reads:
"If there Is Other Insurance
"If an insured person is using a substitute private passenger auto or non-owned auto, our liability insurance will be excess over other collectible insurance. If more than one policy applies on a primary basis to an accident involving your insured auto, we will bear our proportionate share with other collectible liability insurance.
"If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible excess liability insurance.”
Paragraph 2 of the Hertz contract with Atias limited operation of the rental vehicle to himself, his spouse, employer, employees or fellow employees incidental to their business duties. Clearly, Sullivan was not an authorized operator of the Hertz vehicle. Any additional operator was required to appear at the time of rental and sign an "Additional Authorized Operator Form”.
*694 The apparent conflict between these contractual provisions, the application of sections 370 and 388 of the Vehicle and Traffic Law, and public policy requires a careful analysis of existing case law and a review of the legislative history before determining who bears the ultimate responsibility for this property loss.
Vehicle and Traffic Law § 388 provides that a vehicle owner shall be liable for the negligent use or operation of its vehicle. This statutory enactment coupled with New York’s mandatory liability insurance provisions was designed by the Legislature to give injured persons a financially responsible entity against whom recovery could be sought and to avoid the harsh common-law rule. At common law, liability could be imposed upon an owner only upon a theory of respondeat superior or agency. The Court of Appeals in Morris (supra) retraced the origins of Vehicle and Traffic Law § 388 and concluded that the Legislature’s goal was " 'to ensure that owners of vehicles that are subject to regulation in New York "act responsibly” with regard to those vehicles’ ”. (Morris v Snappy Car Rental, supra, at 27 [citation omitted].) In affirming the Appellate Division, Fourth Department, the Court of Appeals agreed that any attempt to disclaim completely the liability imposed by Vehicle and Traffic Law § 388 would be contrary to public policy and void as a matter of law. The Court then considered what it believed to be the more difficult issue of whether the Appellate Division was correct in concluding that Snappy as owner could legally disclaim by indemnity agreement that portion of its liability which exceeded the amount for which owners of rental vehicles are required to be insured under section 370 of the Vehicle and Traffic Law. The Court concluded that "nothing in the statute’s scheme, language or legislative history suggests that a lessor/owner cannot by contract secure indemnification from a lessee/driver for liability stemming from the latter’s negligence which exceeds the amounts for which owners are required to be insured.” (Morris v Snappy Car Rental, supra, at 28.) Significantly, Snappy did not seek to entirely exculpate itself from section 388 liability. Instead, the rental agreement explicitly acknowledged that Snappy’s right to indemnification was subject to other provisions of State law, in this case section 388. The contract went on to provide that Snappy would hold harmless and indemnify the renter to the extent required by State law but that the renter agrees to indemnify Snappy to the extent that any loss, liability or expense exceeded the above limit of indemnification.
*695 In summary, the Court held that no public policy was violated by this private right of contract between the parties since the legislative intent of Vehicle and Traffic Law §§ 388 and 370 was completely fulfilled. Minimum coverage was provided by Snappy as owner of the leased vehicle up to the statutorily prescribed amount, but to the extent liability and losses exceeded this limit of indemnification, the renter agreed to indemnify the rental agency.
The issue in this case concerns Hertz’s attempt by contract to make the lessee operator’s insurance primary and the lessor’s insurance secondary. This issue was clearly not before the Court of Appeals in the Morris case (supra) but the same principles apply. First, it cannot be argued that there is any violation of public policy by enforcing the private contract reached by Hertz and Atias. Unlike other cases where there was an attempt to totally avoid section 388 liability (see, e.g., MVAIC v Continental Natl. Am. Group Co., 35 NY2d 260 [contract clause held unenforceable where section 388 liability avoided altogether by restrictions and conditions on leased vehicle]), Hertz Corp. made no such attempt. To the contrary, the rental customer was free to either bargain for a lower rate by relying on his or her own coverage, purchase Hertz coverage at a slightly higher rental fee, or, in the event the lessee has no coverage, then Hertz would provide coverage to the minimum extent of New York State’s financial responsibility law. Thus, the public policy expressed by the Legislature in the enactment of Vehicle and Traffic Law §§ 388 and 370 was fully preserved and fulfilled.
Secondly, there is no legislative nor common-law expression of preference which favors as a matter of public policy the placement of liability as between the insurer of the owner and the insurer of the driver. This issue was specifically examined in Davis v De Frank (33 AD2d 236 [4th Dept 1970]). Justice Goldman writing for the Court and citing Federal Ins. Co. v Atlantic Natl. Ins. Co. (25 NY2d 71) concluded that there was no reason not to give effect to the private law of the parties as reflected in their binding contractual agreement. (See, Mills v Liberty Mut. Ins. Co., 36 AD2d 445 [4th Dept 1971], affd 30 NY2d 546 [1972] [relying on Davis to uphold the "no liability” clause as not void as against public policy]; see also, Carlino v Lumbermen’s Mut. Cas. Co., 74 NY2d 350 [1989] [where Davis cited for validity of "escape” or "no liability” clause].)
As in Davis (supra), the primary concern should be for the innocent victim of the driver’s carelessness and whether he or *696 she will be fully compensated. Likewise, it is undisputed in both this case and Davis that the sole active tortfeasor and the party who caused the plaintiffs damage was the operator of the motor vehicle. Finally, the cases parallel each other in that the no liability clause of the Hertz contract does not operate unless and until there is sufficient insurance to meet the minimum set by the financial responsibility laws of the State. There is absolutely nothing in section 388 or its legislative history which precludes the parties from privately contracting to satisfy that duty.
The inquiry thus becomes once again whether there is sufficient insurance to meet the minimum required by law and who should bear that burden. Allstate contends that its contract with Sullivan clearly provides that it is excess and not primary. It further asserts that where there is a conflict between an excess clause and a nonliability clause, the nonliability clause is not given effect. (Utica Mut. Ins. Co. v Travelers Ins. Co., 213 AD2d 983 [4th Dept 1995].) The rationale of the Utica Mut. decision is easily understood. Where two separate insurance policies conflicted over coverage pertaining to personal property, the nonliability clause was rendered of no effect in the face of an excess clause since the policy containing the excess clause did not constitute "other available insurance” within the meaning of the nonliability clause.
The facts of this case present a significantly different issue and mandate a different result. Insurance policies like all contracts should be enforced according to their terms unless they are prohibited by public policy, statute or rule. (Liberty Mut. Ins. Co. v Aetna, 168 AD2d 121 [2d Dept 1991].) The enforcement of this provision of the Allstate contract with Sullivan on these facts would completely absolve the active tortfeasor (Sullivan) from any financial responsibility and conversely cause the passive tortfeasor (Hertz) to assume full financial responsibility for plaintiff’s damages. This result is totally illogical and clearly contrary to the legislative intent of Vehicle and Traffic Law §§ 370 and 388.
Allstate’s contract is "excess only over” other "collectible insurance”. Since Hertz’s no liability clause is enforceable as between the lessor and lessee there is no other collectible insurance sufficient to trigger Allstate’s excess clause. Allstate’s insurance must be primary. Otherwise, it would allow an operator of a motor vehicle to do so in New York without insurance. This is contrary to both public policy as reflected in Vehicle and Traffic Law §§ 312 and 319 and the Fourth Department’s *697 holding in Davis v De Frank (33 AD2d 236, supra). There, the Court stated, "if a policy provision conditions coverage on there being no other valid and collectible insurance, either primary or excess, then the clause will be given effect and the other insurer, whose policy contains an excess clause, will have primary liability.” (Davis v De Frank, supra, at 241.)
By making Allstate’s policy primary, we are not, as urged by Allstate, allowing an insured to contract with another to expand the coverage of his insurance policy. Mr. Atias, not Sullivan, entered into the rental agreement with Hertz. Sullivan was an unauthorized operator of the Hertz vehicle. This further reinforces imposing primary liability on the operator of the vehicle where there otherwise is full legal insurance coverage and not on the owner who is only vicariously liable for plaintiff’s damages.
Judgment in the amount of $3,723.46 is granted in favor of plaintiff against defendant, Michael Sullivan, and his insurance carrier, Allstate.

. Vehicle and Traffic Law § 388 provides in pertinent part: "1. Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner. Whenever any vehicles as hereinafter defined shall be used in combination with one another, by attachment or tow, the person using or operating any one vehicle shall, for the purposes of this section, be deemed to be using or operating each vehicle in the combination, and the owners thereof shall be jointly and severally liable hereunder.”