**ALLSTATE INSURANCE COMPANY,**
**Plaintiff,**

v.

**SNAPPY CAR RENTAL, INC. and**
**Elrac Inc., Defendants.**

**No. 96 Civ. 4781(CBM).**

United States District Court,
S.D. New York.

Aug. 25, 1998.

---

Teresa Graham, Rosenman & Colin, LLP, New York City, for plaintiff.

David W. Brand, Brand & Brand, Garden City, NY, Paul L. Kassirer, Lester, Schwab, Katz & Dwyer, New York City, for defendants.

## *MEMORANDUM OPINION*

MOTLEY, District Judge.

Plaintiff, Allstate Insurance Company ("Allstate"), commenced the above-captioned action on June 25, 1996 against defendants, Snappy Car Rental, Inc. ("Snappy") and EL-RAC, Inc. ("ELRAC"), seeking declaratory relief pursuant to 28 U.S.C. § 2201.

On October 16, 1996, both Snappy and ELRAC filed motions for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Allstate filed a cross-motion for summary judgment. This case was reassigned to this judge from Judge Allen G. Schwartz on June 26, 1997.

For the reasons set forth below, the court hereby denies both Snappy's and ELRAC's motions for summary judgment, and hereby grants Allstate's cross-motion for summary judgment.

## I. FACTS

Allstate is a corporation organized under the laws of the State of Illinois, with its principal place of business in Northbrook, Illinois. Snappy is a corporation organized under the laws of the State of Ohio, with its principal place of business in Tulsa, Oklahoma. ELRAC is a corporation organized under the laws of the State of Delaware, with its principal place of business in Hackensack, New Jersey. Both Snappy and ELRAC are licensed to and, in fact, do transact the business of renting vehicles for hire in the State of New York. There is, therefore, no issue of either jurisdiction or venue.

### A. The Snappy Action

Allstate issued an automobile policy to Richard Hoelderlin ("Hoelderlin") for the policy period of May 13, 1993 to November 13, 1993. Allstate also issued a "Rental Vehicle Coverage Endorsement" in connection with the Hoelderlin policy which provides coverage for the insured's obligations in the event of damage or loss of any rental vehicle.

Hoelderlin rented an automobile from Snappy on April 26, 1993, and executed a rental agreement ("Snappy Rental Agreement") which contains the following two provisions:

A. I represent to You that I have a valid policy of automobile liability insurance in force for bodily injury or death of another, and for property damage. You are relying upon My representation about My automobile insurance, and You are not providing automobile liability insurance, or any other form of insurance covering the Car, to Me or to any other person using or riding in the Car while it is on rent to Me.

B. I and all Authorized Renters will defend, indemnify, and hold You harmless from all claims, liabilities, and expenses for

bodily injury, death or property damage, arising out of the use, operation or possession of the Car by anyone while the Car is on rent to Me.

On May 18, 1993, an automobile accident involving Hoelderlin and Otis Bowles, Jr. ("Bowles") occurred in Queens, New York. At the time of the accident, Hoelderlin was operating the automobile rented from Snappy.

On February 6, 1995, Bowles filed a complaint in the Supreme Court of the State of New York, County of Queens, against Snappy and Hoelderlin, alleging that the rental vehicle Hoelderlin was operating "rear ended" Bowles' vehicle, causing Bowles to suffer various injuries. Bowles' complaint seeks over $5 million in damages.

## B. The ELRAC Action

Allstate issued an automobile policy to Rosalind Williams ("Williams") for the policy period October 21, 1994 to April 21, 1995. Allstate also issued a "Rental Vehicle Coverage Endorsement" in connection with Williams' policy, which provides coverage for the insured's obligations if any rental vehicle is damaged or lost.

Williams rented an automobile owned by ELRAC on December 28, 1994, and executed a rental agreement ("ELRAC Rental Agreement") which contains the following two indemnity provisions:

6. Enterprise provides no BODILY INJURY or PROPERTY DAMAGE LIABILITY INSURANCE or coverage to renter or any other operator or user for bodily injury or property damage to renter, operator, user, passengers, or any third party. Renter's insurance applies. Renter represents and warrants that they have and will maintain in force during the term of this rental agreement, BODILY INJURY and PROPERTY DAMAGE LIABILITY INSURANCE for renter, other operators, users, passengers and third parties equal to the financial responsibility limits required by the applicable Motor Vehicle Financial Responsibility Laws of the state where the vehicle is operated or used. Renter agrees to defend, indemnify, and hold Enterprise harmless from any claims, liabilities, costs, and expenses arising from renter's use, operation or possession of the rented vehicle...

15. Renter shall defend, indemnify, and hold Owner harmless from all losses, liabilities, damages, injuries, claims, demands, costs and expenses connected with the possession or use of the rental car including claims of, or liabilities to, third parties due to abandonment, conversion, concealment, or unauthorized sale of the car or confiscation of the car by governmental authority, for any unlawful or improper use.

On December 31, 1994, Rosalind Williams and Philip Labbe ("Labbe") were involved in a car accident in Hempstead, New York. At the time of the accident, Williams was driving the car rented from Enterprise Rent–A–Car and owned by ELRAC.

On March 24, 1995, Labbe and his wife filed a complaint in the State of New York, County of Nassau, against ELRAC and Williams, alleging that the rental vehicle Williams was driving "rear ended" Labbe's vehicle, resulting in various injuries. The Labbes are seeking $6,025,000 in damages.

## II. ANALYSIS

### A. Standard for Summary Judgment

According to the Federal Rules of Civil Procedure, summary judgment shall be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994) (the court may only grant summary judgment when "no rational jury could find in favor of the nonmoving party").

The moving party has the burden of establishing a prima facie case demonstrating the lack of a genuine issue of material fact. Once the moving party meets this burden,

the non-moving party has the burden of providing enough evidence to support a jury verdict in its favor. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. In considering a summary judgment motion, all of the facts must be viewed in the most favorable manner for the non-moving party. *See Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 721 (2d Cir.1994).

**B. Applicable Law**

In a diversity action, a federal court must apply the substantive law of the state in which it sits. *Erie Railway Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Moore v. National Distillers and Chemical Corp.,* ·143 F.R.D. 526, 530 (S.D.N.Y.1992). Thus, in this case, the court must apply the substantive law of the State of New York.

**C. The Vehicle and Traffic Law of New York**

The Vehicle and Traffic Law of New York ("VTL") was enacted to protect innocent victims of car accidents from grave financial losses arising from their injuries. *See* VTL § 310(2) ("Declaration of purpose... The legislature determines that it is a matter of grave concern that motorists shall be financially able to respond in damages for their negligent acts, so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them."). In furtherance of the objectives of the VTL, section 388 provides that motor vehicle owners are to be held liable for injuries resulting from the negligent operation of the vehicle. *See* VTL § 388(1) ("Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle...").

**D. The Contractual Indemnification Provisions of the Snappy and ELRAC Rental Agreements are Invalid under New York Law as to the Amount of the Owner's Statutory Liability.**

The issue before the court is whether or not the contractual indemnification provisions

of the Snappy Rental Agreement and· the ELRAC Rental Agreement are valid and legally enforceable. The court finds and concludes that the contractual indemnification provisions of both the Snappy and the ELRAC Rental Agreements violate the VTL and are, therefore, invalid under New York law as to the minimum amount of automobile accident insurance required to be carried by every *owner* of a motor vehicle in New York State. *See* VTL §§ 370(3) and 388.

The Court of Appeals of New York has already ruled on this issue in *Morris v. Snappy Car Rental, Inc.,* , 637 N.E.2d 253, 614 N.Y.S.2d 362, 84 N.Y.2d 21 (1994). In *Morris,* the Court of Appeals held that a vehicle owner can secure indemnification from a driver of the vehicle for "liability stemming from the latter's negligence which *exceeds* the amounts for which owners are required to be insured." *Id.* 84 N.Y.2d at 28 (emphasis added). The court expressly noted that to allow an owner "to disclaim completely the liability imposed by section 388 would be contrary to public policy." *Id.* 84 N.Y.2d at 27.

In *Morris v. Snappy Car Rental, Inc.,* Snappy, a defendant in the instant case, had entered into an indemnity agreement with lessee Barbara Morris ("Morris") to indemnify Snappy not only for Snappy's statutory minimum liability but for all amounts above such statutory liability.

In addition, Barbara Morris claimed that the entire indemnity agreement, which she did sign, was part of a contract of adhesion or the result of procedural unconscionability in the contract formation, a contract that she had not read. The Court of Appeals in *Morris* found that the contract signed by Morris was not a contract of adhesion as she claimed. It noted that Morris was a high school graduate and had attended college. The Court of Appeals ruled that she had failed to show that she had been prevented from reading the contract. It further noted that she had initialed the space next to the provision which permitted her to decline to purchase additional accident insurance. Finally the *Morris* court ruled, "Although plaintiff would use to her advantage the fact that she did not read the terms of the rental

agreement and was unaware of its indemnification language, this is simply no bar to enforcement of the rental agreement." *Morris*, 84 N.Y.2d at 30. The Court of Appeals was then addressing that part of the indemnity agreement which exceeded the owner's statutory liability. The Court of Appeals reversed that part of the Appellate Division's decision which had held the indemnity agreement enforceable as to the owner's statutory liability. *Morris*, 84 N.Y.2d at 30. The Court of Appeals then said, "Freedom of contract permits plaintiff, as lessee, to agree to limit her statutory protection of recourse against the owner under section 388." *Morris*, 84 N.Y.2d at 30. This superficially contradictory statement must, of course, be read in its context—the *Morris* court's discussion of Barbara Morris' defenses to enforcing, not a portion of the indemnity agreement but the indemnity agreement in its entirety.

Relying on the superficially contradictory statement in *Morris*, quoted above, some courts have upheld full indemnity agreements, covering both statutory and non-statutory liability, on the theory that the owner had not, in those cases, specifically repudiated its obligation under § 388. *See Richard v. Elrac, Inc.*, 1997 WL 566142 (S.D.N.Y. 1997); *Miller v. Sullivan, et al.*, 174 Misc.2d 690, 666 N.Y.S.2d 892 (N.Y. Sup.Ct., Monroe County 1997); *ELRAC, Inc. v. Rudel*, 233 A.D.2d 417, 650 N.Y.S.2d 273 (App. Div.2d Dep't 1996). The effect of these decisions is to make the lessee's insurer the primary insurer.

The Insurance Department of the State of New York agrees with the result reached by the Court of Appeals in *Morris*. The Insurance Department maintains that the vehicle owner "must provide primary coverage up to the minimum statutorily required liability insurance limit." Thus, indemnification provisions seeking to shift liability to the driver are valid "only to the extent that the liability exceeded that amount of coverage which the rental company, as vehicle owner, was required to maintain under the statute." *See* Affidavit of Paul F. Altruda, Assistant Deputy Superintendent and Counsel of the State of New York Insurance Department, dated October 11, 1996.

The contractual indemnification provisions of both the Snappy Rental Agreement and the ELRAC Rental Agreement seek to avoid the liability imposed by VTL § 388 and shift primary liability to the lessees. Since such shifting violates both the purpose and the substance of the VTL it cannot be sanctioned by this court. Therefore, as the Court of Appeals of New York has already ruled, these provisions are invalid under New York law as to the owner's primary liability.

## III. CONCLUSION

For the reasons set forth above, the court hereby denies both Snappy's and ELRAC's motions for summary judgment, and hereby grants Allstate's cross-motion for summary judgment.

SO ORDERED.