OPINION OF THE COURT
Franklin R. Weissberg, J.
This is a declaratory judgment action seeking to clarify indemnification issues which have arisen in a separate proceeding brought in Supreme Court, Queens County (Davide v ELRAC, Inc., Sup Ct, Queens County, index No. 10045/96). The plaintiff Worldwide Insurance Company has moved for summary judgment in its favor. The defendants U.S. Capital Insurance and ELRAC, Inc. have each cross-moved for summary judgment in their favor.
BACKGROUND
This action arises from an accident occurring in Queens on November 19, 1994 in which an automobile rented by Charles DiMarino from ELRAC, also known as Enterprise Rent-A-Car, struck a pedestrian, Alan Davide. The automobile was driven by DiMarino’s wife, Joanne. In the Queens County action, Davide sued ELRAC and Joanne DiMarino for damages. In turn, ELRAC brought a third-party action against Charles DiMarino for indemnification.
ELRAC is a self-insured car rental company. Its rental agreement with Charles DiMarino expressly states that the company does not supply bodily injury or property damage liability insurance to renters and that the renter’s insurance applies. The agreement also states that the renter agrees to defend, indemnify and hold ELRAC harmless from any claims and expenses arising from the renter’s use of the rented vehicle. The agreement, however, gives the renter the option of purchasing “personal accident insurance”, as well as other types of protection. Charles purchased personal accident insurance. Under *482 the agreement, this insurance does not cover third parties for damages or injuries.
Apparently, the DiMarinos purchased an automobile policy with U.S. Capital which went into effect on November 17, 1994, two days prior to the accident with Davide. Their previous policy, with Worldwide, was effective until September 14, 1995. They did not notify Worldwide that they wished to cancel until after the accident, by letter dated December 10, 1994. Upon service of process in the Davide action, Joanne sent, both U.S. Capital and Worldwide copies of the summons and complaint and requested that they defend her. Both companies retained separate counsel to represent her. Joanne also contacted ELRAC about the Davide lawsuit, but the company refused to defend her on the ground that the agreement did not provide insurance and that the primary insurer of the rented automobile was either U.S. Capital or Worldwide.
Thereafter, in a separate action brought in Supreme Court, Nassau County, Worldwide sought a declaration that ELRAC is required to defend and indemnify Joanne up to the minimum liability limits required by law. It also sought a declaration that its policy with the DiMarinos was effectively canceled prior to the accident and that, in the absence of coverage by ELRAC, U.S. Capital is obligated to defend and indemnify Joanne DiMarino. ELRAC cross-claimed for a declaration that, pursuant to the express terms of the rental agreement, it is entitled to contractual indemnification from Charles DiMarino for the costs of defending itself in the Davide action.
In the meantime, on August 21, 1997, an order of rehabilitation was issued by the Supreme Court, New York County (Richard B. Lowe, III, J.), which appointed the New York State Superintendent of Insurance as the rehabilitator of U.S. Capital and enjoined any action or proceeding against the company. The rehabilitation proceeding was later converted to a liquidation proceeding supervised by Justice Lowe. As a result of the order of rehabilitation, the Supreme Court, Nassau County (Bernard F. McCaffrey, J.), declined to resolve the parties’ dispute and, by order issued June 26, 1998, transferred the declaratory judgment action to New York County for assignment to Justice Lowe.
The case has since been assigned to this Part. Worldwide now moves for summary judgment in its favor declaring that ELRAC is responsible for defending and indemnifying Joanne DiMarino in the Davide action and that U.S. Capital is so responsible if ELRAC is not. U.S. Capital has cross-moved for *483 summary judgment to the same effect except that it seeks a declaration that Worldwide is responsible if ELRAC is not. ELRAC has also cross-moved for summary judgment, seeking a declaration that Charles is contractually obligated to indemnify it for the expenses which it incurs in the Davide action.
DISCUSSION
In asserting that ELRAC is responsible for indemnifying Joanne DiMarino, Worldwide argues that the company is required by the Vehicle and Traffic Law to provide a specified minimum coverage for all drivers who operate one of its rented automobiles. It contends that ELRAC must provide primary insurance for all claims up to this statutory limit. Worldwide also contends that ELRAC is prohibited from requiring that it be indemnified for any expenses it incurs as a result of the use or operation of the rented vehicle.
There are a number of provisions under the Vehicle and Traffic Law which impose on a car rental company the obligation to maintain insurance on its motor vehicles up to a specified amount and that this insurance cover all who use the vehicle with its permission. Under Vehicle and Traffic Law § 311 (4) (a) and § 345 (b) (2), an automobile owner is required to maintain liability insurance covering any persons using or responsible for the use of the motor vehicle with the owner’s express or implied consent. Under section 370 (1) and (3), car rental companies are required to maintain insurance on their motor vehicles up to a minimum amount. Under section 388, the negligence of the operator of a motor vehicle is imputed to the owner. The statute imposes responsibility upon an owner for the negligence of a person legally operating a vehicle with permission. The statute is designed to give injured persons access to a financially responsible entity from which there is a realistic possibility of recovery of damages. (See, Mowczan v Bacon, 92 NY2d 281 [1998].)
Thus, these statutes obligate every vehicle owner to procure adequate liability insurance which encompasses the insured owner’s liability for his or her use of the vehicle and the use of .the vehicle by another with the owner’s permission. (See, Morris v Snappy Car Rental, 189 AD2d 115, 122 [4th Dept 1993], affd 84 NY2d 21 [1994].) In opposing Worldwide’s motion for summary judgment, ELRAC argues that the statutory goal of these provisions has been satisfied herein because any person who is injured in an accident with one of its motor vehicles may sue the company and the company has sufficient resources *484 to pay any resulting judgment. It contends that it should be entitled to contract away its liability by not extending coverage directly to its renters and by requiring the renter to indemnify it for any expenses or liability which it may incur.
In Morris v Snappy Car Rental (84 NY2d 21 [1994], supra), the Court of Appeals addressed the legality under the Vehicle and Traffic Law of an indemnification provision contained in a car rental agreement requiring the renter to indemnify the rental agency for liability arising out of the use of the vehicle which exceeds the insurance coverage the company is required to maintain under State law. Although the Court held that this indemnity provision was enforceable, it made it clear that the company was barred from disclaiming liability under the statutory limit. (Supra, at 29.) In effect, the Court of Appeals held that a car rental company, as owner, is statutorily required to provide primary coverage for the automobile and for anyone driving the vehicle with its permission up to the statutory limit and that this obligation could not be contracted away.
Thereafter, in Government Empls. Ins. Co. v Chrysler Ins. Co. (256 AD2d 1212 [4th Dept 1998]), the Fourth Department, which was the intermediate Court that issued the Morris decision (supra), found that a car rental agency cannot refuse to provide primary insurance covering its renters. The Court also found that Morris entirely precludes a car rental agency from enforcing an indemnity agreement covering its statutory liability.
In its opposition papers, ELRAC relies exclusively on the fact that the Second Department, in conflict with the Fourth Department, has concluded that Morris (supra) does not entirely preclude a car rental agency from enforcing an indemnity agreement covering both statutory and nonstatutory liability where the lessee of the vehicle was not injured. (See, e.g., Campbell v Bonne Annge, 260 AD2d 526 [2d Dept 1999]; ELRAC, Inc. v Beckford, 250 AD2d 725 [2d Dept 1998]; EL-RAC, Inc. v Rudel, 233 AD2d 417 [2d Dept 1996].) Although the Court of Appeals in Morris referred to the protection which Vehicle and Traffic Law § 388 affords to injured parties, the Court’s decision nevertheless was unambiguous in prohibiting an automobile owner from contracting away its statutorily imposed responsibility. Indeed, the New York State Insurance Department has taken the position that a car rental agency must, as a vehicle owner, provide primary coverage up to the minimum statutorily required liability insurance limit. (See, Allstate Ins. Co. v Snappy Car Rental, 16 F Supp 2d 410, 414 *485 [SD NY 1998].) It should also be noted that the court in Allstate, in addition to citing the State Insurance Department’s position, disagreed with the Second Department’s conclusion and found that Morris entirely precludes a car rental agency from enforcing a full indemnity agreement even if the lessee of the vehicle was not injured.
The First Department has not addressed this issue. The rule in New York is that trial courts must follow an Appellate Division precedent set in any department in the State until its own Appellate Division decides otherwise. {See, Stewart v Volkswagen of Am., 181 AD2d 4, 7 [2d Dept 1992].) None of the parties has suggested that because the venue of the underlying action is Queens County, this court is bound to follow the Second Department in the absence of a controlling First Department decision.
Under the circumstances, this court concludes that the Fourth Department has correctly interpreted Morris {supra) and that a car rental agency is precluded from enforcing an agreement which denies insurance coverage to the renter up to the statutory amount and requires the renter to indemnify the company for liability which falls within the statutory amount.
ELRAC nevertheless argues that Morris {supra) and, indeed, all of the Vehicle and Traffic Law provisions referring to a company’s insurance obligations are inapplicable because it is self-insured and, as such, need not provide minimum coverage since there is properly no insurance policy in effect. This argument is without merit. It is true that self-insurance is technically not insurance but is merely an “assurance” permitted by statute that judgments will be paid. {See, Guercio v Hertz Corp., 40 NY2d 680, 684 [1976].) However, as the Court of Appeals has noted, the availability of self-insurance under Vehicle and Traffic Law §§ 361 and 370 (3) was not intended to diminish in any way the statutory protections otherwise afforded to users of rental vehicles. (See, Matter of Allstate Ins. Co. v Shaw, 52 NY2d 818, 820 [1980].) Indeed, in that case, the Court of Appeals strongly suggested that a self-insured leasing company must provide the minimum coverage mandated by law. The Court stated that “Were the issue of minimum coverage before us, we cannot believe that [a contrary interpretation] would be upheld.” (Supra, at 821.)
Because ELRAC is therefore required, as a self-insured company, to provide minimum coverage for those who rent its automobiles, the provisions in its rental agreement which preclude the lessee from all coverage and which impose on the *486 lessee an absolute obligation to indemnify the company are valid only to the extent that they apply to liability which exceeds the amount for which vehicle owners are required to be insured under Vehicle and Traffic Law §§ 388 and 370. Otherwise, the provisions are invalid.
Having reached this conclusion, the court nevertheless finds that the provisions at issue in this action are unenforceable. CPLR 4544 provides that the “portion of any printed contract or agreement involving a consumer transaction * * * where the print is not clear and legible or is less than eight points in depth or five and one-half points in depth for upper case type may not be received in evidence in any trial, hearing or proceeding on behalf of the party who printed or prepared such contract or agreement, or who caused said agreement or contract to be printed or prepared.” This statute is applicable to the rental agreement between the parties herein. (See, General Elec. Capital Auto Lease v D'Agnese, 239 AD2d 462 [2d Dept 1997].) Although Worldwide does not contend that the relevant provisions in the agreement are not clear and legible, it does argue that the print is less than the requisite size. In support of this assertion, it has submitted an affidavit from Marion Kurila, a typesetter for the past 38 years, as well as a demonstrator and teacher of typesetting equipment. Ms. Kurila states that, using a printer’s E-Scale and a computer to determine the type size of the provisions at issue herein, she found that the lower case letters were printed in six-point type, which is less than the requisite size.
In opposition to Worldwide’s argument, ELRAC contends that the phrase “points in depth” under CPLR 4544 refers not to the size of the type but to the space between the lines. They argue that the space between the lines in the rental agreement satisfies the statutory size requirement. Under ELRAC’s interpretation, the size of the print, no matter how small, is irrelevant so long as the print is legible and the sentences are properly spaced. This interpretation makes little sense and, in fact, offers consumers far less protection than the interpretation suggested by Worldwide. ELRAC’s primary support for its interpretation is a memorandum from then-Secretary of State Mario Cuomo, who observed that CPLR 4544 “appears” to refer to the distance between the lines rather than the size of the print. However, since it is the intention of the Legislature which the court must consider in its interpretation of a statute (see, Albright v Metz, 88 NY2d 656, 664 [1996]), Secretary Cuomo’s opinion about the meaning of the phrase “points in depth” *487 does not offer any meaningful contribution to the resolution of the issue. On the other hand, the preenactment statement of the bill’s sponsor, Assemblyman Edward H. Lehner, may properly be considered as evidence of legislative intent. (See, Civil Serv. Empls. Assn. v County of Oneida, 78 AD2d 1004 [4th Dept 1980].) Assemblyman Lehner stated, in a memorandum accompanying the bill, that it was intended to set a minimum point type for consumer contracts. It is telling that his memorandum did not refer to any requisite distance between the lines. Moreover, it is notable that not one court which has applied CPLR 4544 has found that the phrase “points in depth” refers to the space between sentences as opposed to the size of the type. On the contrary, a number of courts have made the commonsense assumption that the statute refers to type size. (See, e.g., General Elec. Capital Auto Lease v D’Agnese, 239 AD2d, supra, at 463; Hacker v Smith Barney, Harris Upham & Co., 131 Misc 2d 757, 760 [Civ Ct, NY County 1986].)
In view of Ms. Kurila’s affidavit that the provisions at issue contain type which is less than the requisite size and in the absence of any probative evidence to the contrary offered by ELRAC, Worldwide’s motion for summary judgment on the ground that the rental agreement is unenforceable under CPLR 4544 must be granted.
Finally, it is clear that even if the agreement were enforceable, Worldwide would not be responsible for any liability which the DiMarinos may incur in the Davide action. As noted previously, the DiMarinos purchased an automobile policy with U.S. Capital which went into effect two days prior to the accident. The fact that it was not until after the accident that the DiMarinos informed Worldwide that they wished to cancel their Worldwide policy is of no importance. It is well established that a supervening policy of liability insurance terminates a prior insurer’s obligation to indemnify as of the effective date and hour of the new policy. (See, Employers Commercial Union Ins. Co. v Firemen's Fund Ins. Co., 45 NY2d 608, 609 [1978]; Vehicle and Traffic Law § 313 [1] [a].)
Accordingly, Worldwide’s motion and U.S. Capital’s cross motion are granted to the extent that it is hereby declared that ELRAC is obligated to indemnify Joanne DiMarino for any liability and expenses which she incurs in the Davide action. ELRAC’s cross motion is denied and it is hereby declared that Charles DiMarino is not contractually obligated to indemnify ELRAC for the expenses which it incurs in the Davide action.