[866 NYS2d 239]

CHRISTOPHER R. LONNER, Respondent, v SIMON PROPERTY GROUP, INC., Appellant.

Second Department, October 14, 2008

### APPEARANCES OF COUNSEL

*Sills Cummis Epstein & Gross P.C.*, New York City (*Jeffrey J. Greenbaum* and *James M. Hirschhorn* of counsel), for appellant.

*Sanford Wittels & Heisler, LLP*, New York City (*William R. Weinstein* of counsel), for respondent.

### OPINION OF THE COURT

DICKERSON, J.

## Introduction

We are asked on this appeal to determine whether, in the absence of clear and unambiguous disclosure, the imposition of dormancy and administrative fees decreasing the redeemable value of a gift card constitutes a sufficient predicate for causes of action to recover damages for breach of contract and deceptive business practices in violation of General Business Law § 349. We hold that it does.

## The Litigation

On February 18, 2004, the plaintiff commenced this class action challenging, inter alia, a $2.50 monthly "dormancy fee"[1] imposed by the defendant in connection with its promotion and

---

1. Virtually all gift cards have expiration dates and are subject to a variety of fees, including maintenance fees or dormancy fees (*see Gift Cards 2007:*

sale of Simon Gift Cards, and the allegedly improper manner in which such fees were disclosed.[2] The Simon Gift Card (hereinafter the card) is a prepaid, stored-value card, which is issued by Bank of America, N.A., pursuant to a license from Visa U.S.A., Inc., and may be used everywhere Visa is accepted. The card is programmed to hold a balance that is recorded on it at the time of purchase, and stored on it thereafter. Each time the card is used, the amount of the transaction is deducted from the available balance. The card is plastic and resembles a standard credit card. There is a magnetic strip on the back of the card, below which is recited, in relevant part, as follows: "An administrative fee of $2.50 per month will be deducted from your balance beginning with the seventh month from the month of card purchase." Once the card is activated, it is placed in a cardboard sleeve, which is styled as a cardboard folding "book" with the sleeve at the top, into which the card is inserted, along with five additional folding double-sided "pages" which are attached to the sleeve. On the front five "pages," general information about the card and its use is included, and on the back five "pages" the cardholder agreement and terms and conditions are articulated. The amended complaint alleges that the five "pages" on the back of the card sleeve that contain the terms and conditions of the card, including the dormancy fees, are in small print, in fonts materially less than that required pursuant to CPLR 4544, concealed, and in violation of General Business Law 396-i (3), which provides that "[t]he terms of a gift certificate or store credit shall be clearly and conspicuously stated thereon."[3]

---

*Best and Worst Retail Cards; A Deeper View of Bank Cards Doesn't Improve Their Look,* Montgomery County Office of Consumer Protection, available at http://www.montgomerycountymd.gov/content/ocp/giftcards2007final.pdf).

2. (*See Gift-Card Gotchas,* Consumer Reports, Dec. 2006, at 8 ["'(g)ift cards eliminate the headache of choosing a perfect present, but the recipients might find some cards a pain in the neck. Many come with enough fees and restrictions that you might be better off giving a check. . . . Most annoying are expiration dates and maintenance or dormancy fees"]; Grossman, *The Gift That Just Stops Giving,* New York Times, Feb. 20, 2005, at 3; McCarthy, *Hidden Value: Why Merchants Are So Happy You Lost That Gift Card-Retailers Often Keep Money Left On Plastic; Now, Fights Brew Over Spare Change,* Wall Street Journal, Feb. 26, 2003, at A1 ["Widely introduced in the mid-1990s, gift cards are popular with merchants because they provide quick up-front cash . . . Often displayed at cash registers, gift cards are designed as an impulse purchase for birthday, wedding and graduation presents"].)

3. Other states have enacted gift card or gift certificate consumer protection statutes (*see Gift Cards and Gift Certificates Statutes and Recent Legislation,* National Conference of State Legislatures, *available at http://*

New York courts have repeatedly held that the use of small print in commercial documents may undercut the enforceability of terms that are set forth in such print. Thus, in *Pludeman v Northern Leasing Sys., Inc.* (10 NY3d 486, 489-490 [2008]), the Court of Appeals addressed the sufficiency of a fraud cause of action asserted against individually-named corporate defendants. In *Pludeman*, a class of small business owners who had entered into lease agreements for point-of-service computer terminals asserted that defendant used

> "deceptive practices [and] hid material and onerous lease terms. . . . According to plaintiffs, defendants' sales representatives presented them with what appeared to be a one-page contract on a clipboard, thereby concealing three other pages below . . . Among such concealed items . . . [were a] no cancellation clause[ ] a[nd] no warranties clause, absolute liability for insurance obligations, a late charge clause, and provision for attorneys' fees and New York as the chosen forum," all of which were in "small print" or "microprint" (*id.* at 489-490).

In sustaining the fraud cause of action, the Court noted that

> "it is the language, structure and format of the deceptive lease form and the systematic failure by the salespeople to provide each lessee a copy of the lease at the time of its execution that permits, at this early stage, an inference of fraud against the corporate officers in their individual capacity and not the sales agents" (*id.* at 493).

In *Matter of People v Applied Card Sys., Inc.* (27 AD3d 104, 107 [2005]), the Appellate Division, Third Department, in describing solicitations by credit card companies for new accounts based on

---

*www.ncsl.org/programs/banking/GiftCardsandCerts.htm* [last updated Sep. 28, 2007]; *see e.g.* Conn Gen Stat Ann § 42-460 [prohibits expiration dates], § 3-65c [prohibits service fees]; Ill Comp Stat Ann 505/2SS [b] [on or after January 1, 2008, minimum expiration period is fixed at five years, all postpurchase fees are prohibited, the face value of gift card may not be reduced in value, and the holder may not be penalized in any way for nonuse or untimely redemption]; La Rev Stat Ann § 51:1423 [B] [1], [2] [establishes minimum expiration period of five years, which must be conspicuously disclosed; services fees, including dormancy fees, are prohibited; one-time $1 handling fee may be charged]; Mont Code Ann § 30-14-108 [1] [expiration date prohibited, all service fees, including dormancy fees, are prohibited]; Vt Stat Ann, tit 8, §§ 2702, 2703 [establishes minimum expiration period of three years, which must be clearly marked; service fees, including dormancy fees, are prohibited]).

allegedly "pre-approved" lines of credit, stated that "our review of the new disclosures found the correction to be embedded on the second page of the 'Terms and Conditions of Offer,' in the same typeface as the rest of the paragraph." Similarly, in criticizing the manner in which credit-card companies framed their written solicitations, the Appellate Division, First Department, concluded that "[t]he language in the small print footnote to the solicitation offer, that defendant 'may' allocate payments to the promotional balances first, is ambiguous" (*Broder v MBNA Corp.*, 281 AD2d 369, 370 [2001]). That Court also criticized an insurance company for "relegating to small, inconspicuous print the precise terms of the coverage being extended" (*Taylor v American Bankers Ins. Group*, 267 AD2d 178, 178 [1999]).

The card in the instant dispute set forth the imposition of the fee in font sizes materially less than that required pursuant to CPLR 4544 (*see Sims v First Consumers Natl. Bank*, 303 AD2d 288, 289-290 [2003]; *Hamilton v Khalife*, 289 AD2d 444, 446 [2001]; *General Elec. Capital Auto Lease v D'Agnese*, 239 AD2d 462, 463 [1997]; *Priolo v St. Mary's Home for Working Girls*, 207 AD2d 664, 664-665 [1994]; *Matter of Filippazzo v Garden State Brickface Co.*, 120 AD2d 663, 665-666 [1986]; *Worldwide Ins. Co. v U.S. Capital Ins. Co.*, 181 Misc 2d 480, 486 [1999]). In addition, the fee language was concealed. As the court explained in *Direct Capital Corp. v New ABI Inc.* (13 Misc 3d 1151, 1163 [2006]), in connection with a purported waiver of a warranty,

> "[t]he critical waiver of warranty provision . . . is essentially buried in the text of a six-page document. The typeface is identical to the surrounding provisions and is almost imperceptibly darker than other text . . .
>
> "This Court finds the disclaimer at issue not to be conspicuous but rather to be deliberately obscured in the single-spaced, fine print, multiple provisions of boilerplate of the agreement so as to conceal its effect rather than drawing the reader's attention to it."

Similarly, in *Feldman v Quick Quality Rests., Inc.* (NYLJ, July 22, 1983, at 12, col 5), the court criticized a fast-food chain for imposing a .075% cost-of-energy surcharge on a purchase that was revealed to customers only by means of an effectively invisible two-inch by four-inch sign affixed to the lower left of the main illuminated menu over the service counter that posted the base prices for the items.

A section on the back of the card sleeve, entitled "Do I ever expire?" provided: "An administrative fee of $2.50 per month will be deducted from your balance beginning in the seventh month from the month of card purchase." The actual card term regarding the dormancy fees is placed on the very last page on the back of the 10 folding "pages" of information included with the card sleeve. That section, entitled "Service Charges," provides, in relevant part, as follows:

> "If a balance remains on the Gift Card after the sixth month, the Gift Card will be charged a $2.50 monthly service fee. The fee will be deducted automatically, starting on the seventh month after the month of purchase, from any remaining value on the card on the first day of the month until the value reaches zero."

## Federal Preemption

The original complaint set forth causes of action to recover damages for breach of contract based upon a breach of the implied covenant of good faith and fair dealing, violation of General Business Law § 349, and unjust enrichment, and also sought injunctive and declaratory relief. By notice of motion dated April 30, 2004, the defendant moved pursuant to CPLR 3211 (a) (1) and (7) to dismiss the original complaint. In an order dated September 23, 2004, the Supreme Court granted that branch of the defendant's motion which was to dismiss the original complaint on the ground that the plaintiff's claims were preempted by the National Bank Act (12 USC § 21 et seq.) and the regulations promulgated thereunder by the Office of the Comptroller of the Currency (see 12 CFR 7.4002 [a]; 7.5002 [a] [3]), which regulate national banks. On appeal, this Court reversed, and remitted the matter to the Supreme Court for further proceedings in accordance with Goldman v Simon Prop. Group, Inc. (31 AD3d 382, 383 [2006]), which concluded "[t]he record indicates that the defendant and the national bank are separate entities [and] that it is the defendant, and not the bank, that sells and markets the card, and charges and collects the disputed fees" (Lonner v Simon Prop. Group, Inc., 31 AD3d 398, 398 [2006]; see SPGGC, LLC v Blumenthal, 505 F3d 183, 187, 191 [2007] ["The Connecticut Gift Card Law prohibits the sale of any 'gift certificate' subject to inactivity or dormancy fees or to an expiration date . . . Gift certificates are defined to include gift cards and other stored-value cards . . . We have no

difficulty concluding . . . that SPGGC has failed to state a valid claim for preemption of the Connecticut Gift Card Law insofar as it prohibits SPGGC from imposing inactivity and certain other fees on consumers of the Simon Giftcard . . . SPGGC, however, does state a valid claim for preemption insofar as the Connecticut Gift Card Law prohibits expiration dates"]; *Benson v Simon Prop. Group, Inc.*, 281 Ga 744, 744, 642 SE2d 687, 689 [2007] [purchasers of Simon gift cards seek "damages resulting from the dormancy fees and expiration dates, alleging violations of the Disposition of Unclaimed Property Act (DUPA), OCGA § 44-12-190 et seq."]). Because the Supreme Court dismissed the complaints in both this action and *Goldman* solely on the ground that they were preempted by federal law, it did not reach those branches of the defendant's motions which were to dismiss each cause of action on the merits in both cases and, therefore, those branches of the motions remained pending and undecided (*see Goldman v Simon Prop. Group, Inc.*, 31 AD3d at 383). We thus remitted both matters to the Supreme Court for a determination of those branches of the defendant's motions in both *Goldman* and the instant action (*id.*; *see Lonner v Simon Prop. Group, Inc.*, 31 AD3d 398 [2006]).

## The Motion To Dismiss

On August 18, 2006, the plaintiff filed an amended class action complaint on behalf of a class of consumers of the defendant's Simon Gift Card.[4] The factual allegations in the amended complaint were substantially similar to those in the original complaint, and set forth causes of action to recover damages for breach of contract based upon a breach of the implied covenant of good faith and fair dealing, violation of General Business Law § 349, and unjust enrichment.

By notice of motion dated October 13, 2006, the defendant moved pursuant to CPLR 3211 (a) (1) and (7) to dismiss the

---

4. The amended complaint defines the class as
   "(i) persons residing within the State of New York who hold or held Simon Gift Cards sold by Simon on or before April 29, 2005 ('Card[s]') that are or were subject to a decrease in value resulting from the unlawful and inequitable imposition by Simon of $2.50 monthly charges automatically deducted by defendant from any Card balance remaining more than six months after Card issuance ('Dormancy Fees'); and (ii) all other persons who hold or held Cards sold by Simon within the State of New York on or after April 29, 2005, that are or were subject to the Dormancy Fees" (*see generally* 3 Weinstein-Korn-Miller, NY Civ Prac ¶¶ 901.95, 901.23 [2], [3], [6]).

amended complaint. In an order entered February 28, 2007, the Supreme Court denied those branches of the defendant's motion which were to dismiss the first cause of action alleging breach of contract and the second cause of action alleging deceptive business practices in violation of General Business Law § 349. We affirm the order insofar as appealed from.

Accepting the facts as alleged in the amended complaint as true, and according the plaintiff the benefit of every possible favorable inference (*see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]), the plaintiff has pleaded sufficient facts to support causes of action to recover damages for breach of contract based upon a breach of the implied covenant of good faith and fair dealing, and violation of General Business Law § 349 (*see Sims v First Consumers Natl. Bank*, 303 AD2d 288 [2003]).

### Express Terms/CPLR 4544

CPLR 4544 provides, in relevant part, as follows:

> "The portion of any printed contract or agreement involving a consumer transaction . . . where the print is not clear and legible or is less than eight points in depth or five and one-half points in depth for upper case type may not be received in evidence in any trial, hearing or proceeding on behalf of the party who printed or prepared such contract or agreement, or who caused said agreement or contract to be printed or prepared."

"Although this statute speaks in terms of the admissibility in evidence of such a contract, the underlying purpose of this 'consumer' legislation is to prevent draftsmen of small, illegibly printed clauses from enforcing them" (*Matter of Filippazzo v Garden State Brickface Co.*, 120 AD2d 663, 665 [1986]).

Contrary to the defendant's contention, the plaintiff has not asserted a private right of action under CPLR 4544. Rather, the plaintiff has alleged that the "[d]efendant's imposition and collection of the dormancy fees from plaintiff and the class constitutes a breach of contract because the dormancy fees are unreasonable, excessive, and unenforceable, including under CPLR 4544." In *Sims v First Consumers Natl. Bank* (30 AD2d 288, 289-290 [2003]), the validity of a breach of contract cause of action based upon the alleged improper disclosure of credit card fees was upheld. Here, the plaintiff similarly has alleged that the manner in which the dormancy fees are disclosed is improper. Thus, the plaintiff has sufficiently alleged a cause of

action to recover damages for breach of contract based upon the alleged improper disclosure of fees.

## Unconscionability

Contrary to the defendant's contention, the plaintiff is not seeking affirmative recovery under the doctrine of unconscionability, but instead seeks a declaration that the dormancy fee clause is unenforceable. As we held in *Super Glue Corp. v Avis Rent A Car Sys.* (132 AD2d 604, 606 [1987]), "[u]nder both the UCC and common law, a court is empowered to do no more than refuse enforcement of the unconscionable contract or clause." If the dormancy fee provision is found to be unconscionable and therefore unenforceable, then the breach of contract cause of action arises not from the unconscionability of that provision, but from the defendant's failure to provide the full value of the card (*see Master Lease Corp. v Manhattan Limousine*, 177 AD2d 85, 87-88 [1992] [if the challenged disclaimer of warranties provision in the subject lease were to be held unconscionable, as a matter of law, then the defendants' counterclaim, which seeks damages for breach of warranty, would be a viable one; "under those circumstances, it would be the relevant statutory provisions . . . rather than the doctrine of unconscionability, which would 'give rise' to that counterclaim" (citations omitted)]).

## Breach of the Implied Covenant of Good Faith and Fair Dealing

"Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance . . . This embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion" (*Dalton v Educational Testing Serv.*, 87 NY2d 384, 389 [1995] [internal quotation marks and citations omitted]). "If a factfinder concluded that the [fee] disclosure statement was not clear or conspicuous as required by [law], it could invalidate the fee provision or, alternatively, see it as a violation of the implied duty of good faith and fair dealing" (*see Sims v First Consumers Natl. Bank*, 303 AD2d at 290). The amended complaint alleges that the terms of the fee disclosure are not clear and conspicuous, but rather, unclear and hidden, which is sufficient to maintain a claim based upon a breach of the implied covenant of good faith and fair dealing.

Furthermore, the amended complaint alleges that the amount of the dormancy fee is grossly excessive. Even were the defendant entitled to charge dormancy fees, it is still precluded under the implied covenant of good faith and fair dealing from setting such fees at grossly excessive amounts. Thus, the amended complaint sufficiently states a claim to recover damages for breach of the implied covenant of good faith and fair dealing (*see Englade v HarperCollins Publs.*, 289 AD2d 159 [2001]; *Broder v MBNA Corp.*, 281 AD2d 369 [2001]).

## The Voluntary Payment Doctrine

The defendant claims that when the plaintiff filed the original complaint in February 2004, he knew that a service fee would be imposed if he did not use the card's balance by July 2004. The defendant asserts that the plaintiff, rather than avoid the fee by spending the balance, deliberately left it unspent in order to manufacture an avoidable injury. Thus, the defendant contends that the plaintiff's claims are barred by the voluntary payment doctrine. ''[T]he voluntary payment doctrine bars . . . recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law'' (*Dillon v U-A Columbia Cablevision of Westchester*, 100 NY2d 525, 526 [2003] [internal citation omitted]).

In discussing the issue of voluntary payments, this Court has held that ''[w]hen a party intends to resort to litigation in order to resist paying an unjust demand, that party should take its position at the time of the demand, and litigate the issue before, rather than after, payment is made'' (*Gimbel Bros. v Brook Shopping Ctrs.*, 118 AD2d 532, 535 [1986]). Here, the plaintiff commenced this action in February 2004, prior to the imposition of the first dormancy fee in July 2004. Thus, contrary to the defendant's contention, the voluntary payment doctrine does not bar the plaintiff's claims.

## General Business Law § 349

General Business Law § 349 prohibits deceptive and misleading business practices and its scope is broad, indeed. General Business Law § 349 ''on [its] face appl[ies] to virtually all economic activity, and [its] application has been correspondingly broad . . . . The reach of [General Business Law § 349] provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague

consumers in our State" (*Karlin v IVF Am.*, 93 NY2d 282, 290 [1999]). Judge Graffeo, in her dissent in *Matter of Food Parade, Inc. v Office of Consumer Affairs of County of Nassau* (7 NY3d 568, 574-575 [2006]), accurately described the scope of General Business Law § 349 in the following way:

> "This Court has broadly construed general consumer protection laws to effectuate their remedial purposes, applying the State deceptive practices law to a full spectrum of consumer-oriented conduct, from the sale of 'vanishing premium' life insurance policies . . . to the provision of infertility services . . . We have repeatedly emphasized that General Business Law § 349 and section 350, its companion . . .
>
> 'apply to virtually all economic activity, and their application has been correspondingly broad . . . The reach of these statutes provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State' . . .
>
> "In determining what types of conduct may be deceptive practices under state law, this Court has applied an objective standard which asks whether the 'representation or omission [was] likely to mislead a reasonable consumer acting reasonably under the circumstances' . . . taking into account not only the impact on the 'average consumer' but also on 'the vast multitude which the statutes were enacted to safeguard—including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions' " (internal citations omitted).

To state a cause of action under General Business Law § 349 "a plaintiff must plead: 'first that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act' " (*Singh v Queens Ledger Newspaper Group*, 2 AD3d 703, 704 [2003], quoting *Stutman v Chemical Bank*, 95 NY2d 24, 29 [2000]).

█ The amended complaint adequately states a cause of action to recover damages for violation of General Business Law § 349, since it alleges that the inadequate font size in which the

dormancy fee provision was printed, and the defendant's concomitant failure to conspicuously disclose that provision, constituted a deceptive business practice. Here, the amended complaint alleges, inter alia, that the type size used by the defendant is impermissibly small, that the defendant failed to clearly and conspicuously disclose the existence of the dormancy fees and the circumstance under which they are imposed, and that the plaintiff was injured by this conduct. These allegations were sufficient to state a cause of action under General Business Law § 349. As the Appellate Division, First Department, explained it in *Sims v First Consumers Natl. Bank* (303 AD2d at 289),

> "[t]he gist of plaintiffs' deceptive practices claim is that the typeface and location of the fee disclosures, combined with high-pressure advertising, amounted to consumer conduct that was deceptive or misleading in a material way, causing plaintiffs damages for purposes of General Business Law § 349. Whether defendants' conduct was deceptive or misleading is a question of fact" (*see Taylor v American Bankers Ins. Group*, 267 AD2d 178, 178 [1999]; *Saunders v AOL Time Warner, Inc.*, 2004 WL 5284146 [Sup Ct, NY County, Feb. 9, 2004], *affd* 18 AD3d 216 [2005]; *Relativity Travel, Ltd. v JP Morgan Chase Bank*, 13 Misc 3d 1221[A], *3-4, 2006 NY Slip Op 51926[U] [2006]).

Accordingly, the Supreme Court properly denied those branches of the defendant's motion which were to dismiss the first and second causes of action, and the order is affirmed insofar as appealed from.

SPOLZINO, J.P., SKELOS and FLORIO, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.