[893 NE2d 105, 862 NYS2d 828]

THE PEOPLE OF THE STATE OF NEW YORK, by ELIOT SPITZER, Attorney General of the State of New York, Appellant, v RICHARD A. GRASSO, Respondent, et al., Defendants. (And Other Actions.)

Argued June 3, 2008; decided June 25, 2008

**POINTS OF COUNSEL**

*Andrew M. Cuomo, Attorney General,* New York City (*Barbara D. Underwood, Benjamin E. Rosenberg* and *Jeffrey P. Metzler* of counsel), for appellant. I. Assertion of the nonstatutory causes of action is an appropriate exercise of the Attorney General's historic common-law parens patriae authority. (*State of New York v Cortelle Corp.,* 38 NY2d 83; *People v Lowe,* 117 NY 175; *Finger Lakes Health Sys. Agency v St. Joseph's Hosp.,* 81 AD2d 403; *Hawaii v Standard Oil Co. of Cal.,* 405 US 251; *Alfred L. Snapp & Son, Inc. v Puerto Rico ex rel. Barez,* 458 US 592; *People by Vacco v Mid Hudson Med. Group, P.C.,* 877 F Supp 143; *State of N.Y. by Abrams v General Motors Corp.,* 547 F Supp 703; *State of New York v Booth,* 32 NY 397; *People of State of N.Y. by Abrams v Seneci,* 817 F2d 1015; *People of State of N.Y. by Abrams v Holiday Inns, Inc.,* 656 F Supp 675.) II. The N-PCL did not limit or displace the Attorney General's parens patriae authority. (*People v New York Cent. & Hudson Riv. R.R. Co.,* 74 NY 302; *People v Phyfe,* 136 NY 554; *People v King,* 61 NY2d 550; *Matter of Bayswater Health Related Facility v Karagheuzoff,* 37 NY2d 408; *Sheehy v Big Flats Community Day,* 73 NY2d 629; *Mark G. v Sabol,* 93 NY2d 710; *State of New York v Cortelle Corp.,* 38 NY2d 83; *Consumers Union of U.S., Inc. v State of New York,* 5 NY3d 327; *Alco Gravure, Inc. v Knapp Found.,* 64 NY2d 458; *Smithers v St. Luke's-Roosevelt Hosp. Ctr.,* 281 AD2d 127.)

*Williams & Connolly LLP,* Washington, D.C. (*Gerson A. Zweifach, Brendan V. Sullivan, Jr., Steven M. Farina* and *Carl R. Metz* of counsel), and *Flemming Zulack Williamson Zauderer LLP,* New York City (*Mark C. Zauderer* and *Jonathan D. Lupkin* of counsel), for respondent. I. The Attorney General's parens patriae power does not extend to rewriting statutes. (*Rogers v Hill,* 289 US 582; *Eisenberg v Central Zone Prop. Corp.,* 306 NY 58; *American Baptist Churches of Metro. N.Y. v Gallo-*

*way,* 271 AD2d 92; *Kalmanash v Smith,* 291 NY 142; *Sheehy v Big Flats Community Day,* 73 NY2d 629; *People v Litto,* 8 NY3d 692; *Carrier v Salvation Army,* 88 NY2d 298; *Mark G. v Sabol,* 93 NY2d 710; *Saratoga County Chamber of Commerce v Pataki,* 100 NY2d 801; *Matter of Citizens For An Orderly Energy Policy v Cuomo,* 78 NY2d 398.) II. A suit to return compensation paid by the New York Stock Exchange is not a valid exercise of parens patriae authority. (*People v Lowe,* 117 NY 175; *People v Ingersoll,* 58 NY 1; *Abrams v 11 Cornwell Co.,* 695 F2d 34; *Matter of State of New York v New York City Conciliation & Appeals Bd.,* 123 Misc 2d 47; *People of State of N.Y. by Abrams v Holiday Inns, Inc.,* 656 F Supp 675; *Matter of Herbert H. Lehman Coll. Found. v Fernandez,* 292 AD2d 227; *Pennsylvania v New Jersey,* 426 US 660; *People v O'Brien,* 111 NY 1; *Town of Riverhead v Long Is. Light. Co.,* 258 AD2d 643.)

### OPINION OF THE COURT

Chief Judge KAYE.

This appeal arises out of compensation paid by the New York Stock Exchange (NYSE) to Richard A. Grasso, Chairman and Chief Executive Officer from 1995 until his resignation in September 2003. At all times relevant to this appeal the NYSE was a New York not-for-profit corporation regulated by the Not-For-Profit Corporation Law (N-PCL).[1] The present challenge is to four of the eight causes of action brought by the Attorney General charging that the compensation paid to Grasso was excessive.

### The Allegations of the Complaint

Three agreements, executed in 1995, 1999 and 2003, governed Grasso's compensation by the NYSE. From 1995 through 2002, his base salary was roughly $1.4 million, but his bonus awards escalated from $900,000 in 1995 to $10.6 million in 2002. The 2003 agreement provided Grasso with an immediate lump sum payment of $139.5 million and an additional $48 million payable over four years—compensating him for past and future work.

---

1. N-PCL 201 (b) defines four types of corporations, each with a different purpose. Type A corporations, like the NYSE, "may be formed for any lawful non-business purpose." Type B corporations may be formed to serve "charitable, educational, religious, scientific, literary, cultural [purposes] or for the prevention of cruelty to children or animals"; Type C corporations "may be formed for any lawful business purpose to achieve a lawful public or quasi-public objective"; Type D corporations can serve any purpose so long as their formation is authorized "by any other corporate law of this state."

The Attorney General alleges that the payments contemplated by the 2003 agreement were not reasonable or commensurate with the services performed by Grasso, and therefore violated N-PCL 202 (a) (12) and 515 (b). The complaint describes the situation as "a fundamental breakdown of corporate governance" predicated on numerous breaches of fiduciary duty, beginning with the composition of the Compensation Committee—its members hand-picked by Grasso—which ignored a benchmark system[2] designed to calculate Grasso's compensation. In 1999, 2000 and 2001, the Compensation Committee provided Grasso with awards exceeding the benchmark by 64%, 141% and 65%, respectively. In addition, the Attorney General alleges that information provided to Committee and Board members regarding the extent of Grasso's compensation under various benefit programs was inaccurate, incomplete and misleading.

The complaint then shifts to a description of the negotiation process for the 2003 agreement, beginning with Grasso's 2002 proposal. Instead of immediately approving the package, the Compensation Committee retained the law firm of Vedder Price to serve as independent consultant. By August 2003 an agreement still had not been reached and several Board members expressed disapproval of the $139.5 million figure. In light of these concerns, according to the complaint, the proposal was not included on the agenda for the August 7, 2003 Compensation Committee meeting or Board meeting. During the August 7 Committee meeting, however, the members present decided to approve the proposal and pass it on to the Board. Allegedly, as a result of this last-minute change, neither independent counsel nor opponents of the compensation package were at the meeting, and Board members who did attend had no opportunity to review the details of the package in advance of the meeting. The Board, nonetheless, approved the $187.5 million package.

### Grasso's Resignation and the Instant Action

The negative reaction to Grasso's compensation package forced his resignation and prompted an internal investigation. Based on the investigation's results, the NYSE Interim Chair-

---

**2.** In 1996 the Compensation Committee adopted a policy of assessing executive compensation by comparing it to the compensation paid to senior executives of large, for-profit companies—the "Comparator Group." The basis for selecting these executives was to ensure that the NYSE offered competitive salaries to attract "world class talent."

man wrote both to the Attorney General and to the Chairman of the Securities and Exchange Commission asking that they "pursue the matter on [the NYSE's] behalf and as part of [their] broader responsibilities." Five months later, the Attorney General commenced this action.

The complaint asserts eight causes of action—six against Grasso, one against Kenneth Langone (Chairman of the Compensation Committee from 1999 through June 2003), and one for declaratory and injunctive relief against the NYSE. The causes of action against Grasso can be separated into two categories—the statutory causes of action and the nonstatutory causes of action that are the subject of this appeal. The two statutory claims against Grasso—the second and third causes of action—are for unlawful transfer of corporate assets and breach of fiduciary duty (see N-PCL 720 [a], [b]). Section 720 (b) expressly authorizes the Attorney General to bring these two causes of action and that authority is uncontested in this appeal.[3]

The four nonstatutory claims against Grasso are at bottom premised on provisions of the N-PCL but clothed in the common law. The first and fourth causes of action for a constructive trust and payment had and received, based on a theory of unjust enrichment, are premised on the reasonable compensation provisions of the N-PCL (see N-PCL 202 [a] [12]; 515 [b]). The fifth cause of action seeks restitution of certain benefit awards alleging that a majority of the Board failed to approve them as required by N-PCL 715 (f). Finally, the sixth cause of action alleges that the NYSE's advance payments from a retirement plan violated the prohibition against loans to officers under N-PCL 716 and that the NYSE is entitled to reasonable interest thereon.

Grasso moved to dismiss the four nonstatutory claims on the ground that the Attorney General lacked authority to maintain them. Supreme Court denied defendant's motion to dismiss, holding that the Attorney General had standing to sue under

---

3. The Attorney General's authority to maintain the second and third causes of action is, however, the subject of another appeal pending in the Appellate Division. Grasso alleges that the Attorney General has lost standing to sue under N-PCL 720 because the NYSE, after its corporate reorganization in 2006, became a for-profit company (NYSE LLC) with a not-for-profit regulatory arm (see People v Grasso, 13 Misc 3d 1227[A], 2006 NY Slip Op 52019[U], *9 [2006]). Supreme Court denied Grasso's motion for summary dismissal of those claims.

the parens patriae doctrine to vindicate the interests of the investing public.[4]

A majority at the Appellate Division reversed and dismissed the four nonstatutory causes of action against Grasso, viewing them as an attempt to circumvent the fault-based claims provided by the N-PCL. The dissenting Justices would have permitted the claims to proceed based on the parens patriae doctrine. We now affirm the order of the Appellate Division.

## Analysis

Although several provisions of the N-PCL mirror those regulating for-profit entities under the Business Corporation Law, one unique characteristic is the legislative codification of the Attorney General's traditional role as an overseer of public corporations (*see e.g. People v Lowe*, 117 NY 175 [1889]).

At least 18 provisions of the statute detail the Attorney General's varied enforcement powers. These powers include the ability to provide structural relief with respect to the corporation and to bring actions against individual directors or officers. Section 112 expressly authorizes actions or special proceedings to annul or dissolve corporations that have acted beyond their authority or to restrain unauthorized activities (N-PCL 112 [a] [1]). In addition, the Attorney General may enforce any right given to members of Type B or Type C corporations and, upon an order from Supreme Court, may do the same for Type A corporations (N-PCL 112 [a] [7], [9]). In addition, sections 719 and 720 permit the Attorney General to seek redress for injuries resulting from—to name only a few—unlawful distributions of corporate cash, property or assets (N-PCL 719 [a] [1], [4]), improper loans (N-PCL 719 [a] [5]), waste of corporate assets (N-PCL 720 [a] [1] [B]) and breach of fiduciary duties (N-PCL 720 [a] [1] [A]). The Attorney General's authority to maintain these actions is explicitly codified under N-PCL 720 (b).

---

**4.** Parens patriae is a common-law standing doctrine that permits the state to commence an action to protect a public interest, like the safety, health or welfare of its citizens. To invoke the doctrine, the Attorney General must prove a quasi-sovereign interest distinct from that of a particular party and injury to a substantial segment of the state's population (*see Alfred L. Snapp & Son, Inc. v Puerto Rico ex rel. Barez*, 458 US 592, 607 [1982]). In varying contexts, courts have held that a state has a quasi-sovereign interest in protecting the integrity of the marketplace (*see State of N.Y. by Abrams v General Motors Corp.*, 547 F Supp 703 [SD NY 1982]; *People v H&R Block, Inc.*, 16 Misc 3d 1124[A], 2007 NY Slip Op 51562[U] [2007]).

The Legislature's comprehensive enforcement scheme, however, is not without limitation. First, any action or special proceeding brought by the Attorney General under the N-PCL "is triable by jury as a matter of right" (N-PCL 112 [b] [1]). Second, and most relevant to the issue before us, the Legislature has provided directors and officers with the protections of the business judgment rule (*see* N-PCL 717). The statute provides that officers and directors must discharge "the duties of their respective positions in good faith and with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions" (N-PCL 717 [a]). Officers and directors are permitted to rely on information, opinions or reports of reasonable reliability so long as the officer or director acts in good faith (N-PCL 717 [b]). Moreover, the statute dictates that persons "who so perform their duties shall have no liability by reason of being or having been directors or officers of the corporation" (N-PCL 717 [b]).

Despite the numerous causes of action explicitly made available to the Attorney General, the four nonstatutory claims that are the subject of this appeal rest on an assertion of parens patriae authority to vindicate the public's interest in an honest marketplace. Here, however, as the dispositive defect stems from the inconsistency between the two sets of claims, we need not and do not reach the scope of any such authority. Instead, a side-by-side comparison of the challenged claims and the statutory claims reveals that the Attorney General has crafted four causes of action with a lower burden of proof than that specified by the statute, overriding the fault-based scheme codified by the Legislature and thus reaching beyond the bounds of the Attorney General's authority.

In an analogous context, we have consistently held that a private right of action may not be implied from a statute where it is "incompatible with the enforcement mechanism chosen by the Legislature" (*Sheehy v Big Flats Community Day*, 73 NY2d 629, 635 [1989]; *see also Mark G. v Sabol*, 93 NY2d 710 [1999]; *Uhr v East Greenbush Cent. School Dist.*, 94 NY2d 32 [1999]). That the plaintiff here is the Attorney General as opposed to a private party does not preclude the application of these decisions (*see e.g. People v Litto*, 8 NY3d 692, 705 [2007]). Rather, in this context, the Attorney General's role as a member of the executive branch heightens our concerns. Although the Executive must have flexibility in enforcing statutes, it must do so while maintaining the integrity of calculated legislative policy judg-

ments. That balance falters where, as here, the Executive seeks to create a remedial device incompatible with the particular statute it enforces.

The two statutory claims asserted against Grasso, in addition to those provided in N-PCL 719, rest on the fault-based provisions enacted by the Legislature to remedy not-for-profit corporate wrongdoing. The second cause of action for an unlawful transfer permits an action "[t]o set aside an unlawful conveyance, assignment or transfer of corporate assets, where the transferee *knew of its unlawfulness*" (N-PCL 720 [a] [2] [emphasis added]). The third cause of action for breach of fiduciary duty permits an action for the "neglect of, or failure to perform . . . duties in the management and disposition of corporate assets" and for an officer's "acquisition . . . , loss or waste of corporate assets due to any neglect of, or failure to perform . . . duties" (N-PCL 720 [a] [1] [A], [B]). This claim requires a showing that the officer or director lacked good faith in executing his duties. The plain language of these provisions reveals a legislative policy decision to provide officers and directors of not-for-profit corporations with the "business judgment" protections afforded their for-profit counterparts. The Legislature specifically provided for the Attorney General's role as an overseer of not-for-profit corporations, and requires that he prove an officer's fault to sustain these claims.

By contrast, the four nonstatutory causes of action are devoid of any fault-based elements and, as such, are fundamentally inconsistent with the N-PCL. The first and fourth causes of action—for a constructive trust and payment had and received—rely on the reasonable compensation provisions of the N-PCL and seek the same relief as the statutory claims, yet they lack any element of knowledge or bad faith. Rather, under these claims the Attorney General need only prove that Grasso's compensation was unreasonable and, therefore, unlawful under the N-PCL and constituting an ultra vires act. Abandoning the knowledge requirement of N-PCL 720 (a) (2) and the business judgment rule, they would impose a type of strict liability.

The fifth cause of action asserts that Grasso's salary was not approved in accordance with N-PCL 715 (f). Section 715 addresses circumstances relating to interested directors and officers. It provides, "[t]he fixing of salaries of officers . . . shall require the affirmative vote of a majority of the entire board" (N-PCL 715 [f]). It does not, however, grant the Attorney General the authority to maintain an action for the Board's failure

to properly vote on a compensation package. In fact, N-PCL 715 (b) provides the corporation—not the Attorney General—with the power to avoid contracts or transactions between the corporation and its officers or directors and, even then, such actions may only be maintained in the absence of good faith (N-PCL 715 [b]).

Finally, the sixth cause of action alleges that certain advance payments from Grasso's supplemental retirement plan constituted an improper loan under N-PCL 716 and seeks interest on the loaned amounts. As distinct from the other three, the N-PCL expressly provides the Attorney General the authority to bring an action against directors who approve a loan in violation of N-PCL 716 (*see* N-PCL 719 [a] [5]; 720 [b]). The Attorney General's present claim fails, however, for the same reason as the other three: the statutory claim would require the Attorney General to overcome a business judgment defense, whereas the action pleaded disregards the knowledge element that other unlawful transfers must allege (*see* N-PCL 719 [e]; 720 [a] [2]).

In summary, each of the challenged causes of action against Grasso seeks to ascribe liability based on the size of his compensation package. The Legislature, however, enacted a statute requiring more. The Attorney General may not circumvent that scheme, however unreasonable that compensation may seem on its face. To do so would tread on the Legislature's policy-making authority.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order affirmed, etc.