[869 NYS2d 125]

Aliza Goldman, Appellant-Respondent, v Simon Property Group, Inc., Respondent-Appellant.

Second Department, November 25, 2008

210

### APPEARANCES OF COUNSEL

*Trief & Olk*, New York City (*Barbara E. Olk* of counsel), for appellant-respondent.

*Sills Cummis & Gross, P.C.*, New York City (*Jeffrey J. Greenbaum* and *James M. Hirschhorn* of counsel), for respondent-appellant.

### OPINION OF THE COURT

DICKERSON, J.

We have previously examined the phenomena of plastic gift cards[1] (*see Lonner v Simon Prop. Group, Inc.*, 57 AD3d 100 [2008]; *Llanos v Shell Oil Co.*, 55 AD3d 796 [2008]).

---

1. In *Lonner v Simon Prop. Group, Inc.* (57 AD3d 100 [2008]), a class of consumers challenged the imposition of gift card dormancy fees in the sum of $2.50 per month. The complaint in *Lonner* set forth causes of action to recover damages for breach of contract, violation of General Business Law § 349, and unjust enrichment. Within the context of the defendant's motion pursuant to CPLR 3211 (a) (1) and (7) to dismiss the amended complaint, this Court found that the *Lonner* plaintiffs had pleaded sufficient facts to support causes of action for breach of contract based upon a breach of the implied covenant of good faith and fair dealing and a violation of General Business Law § 349.

Subsequently, in *Llanos v Shell Oil Co.* (55 AD3d 796 [2008]), a class of consumers challenged the imposition of gift card dormancy fees in the sum of $1.75 per month. The complaint in that action set forth causes of action to recover damages for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of General Business

The instant action, like the *Lonner* action, challenges the imposition by the defendant Simon Property Group, Inc. (hereinafter Simon) of a dormancy fee in the sum of $2.50 per month and alleges, inter alia, that Simon "began to automatically deduct $2.50 per month as Dormancy Fees beginning the seventh month after the purchase of the Gift Card held by plaintiff without proper notice to plaintiff," that the card did not place the user on notice of the deduction of the dormancy fees, that the card "was deceptive in its failure to provide reasonable notice of the deductions of Dormancy Fees," and that the defendant's "sale, distribution, and marketing of the Gift Cards without providing proper notice of the deductions of Dormancy Fees was deceptive and materially misleading."

According to its terms, the Simon Gift Card (hereinafter the card) is "a prepaid, stored-value card," which may be used anywhere Visa cards are accepted. The card resembles a credit card and is programmed to hold a balance chosen by the purchaser. Each time the card is used, the amount of the transaction is deducted from the available balance of the card. There is a magnetic strip on the back of the card, below which it states, in pertinent part: "[a]n administrative fee of $2.50 per month will be deducted from your balance beginning with the seventh month from the month of card purchase."

Federal Preemption

Initially, the defendant moved to dismiss the complaint pursuant to, inter alia, CPLR 3211 (a) (2). On appeal, this Court reversed the Supreme Court's determination that the plaintiff's claims were preempted by federal law, reasoning that "[t]he record indicates that the defendant and the national bank are separate entities [and] that it is the defendant, and not the bank, that sells and markets the card, and charges and collects the disputed fees" (*Goldman v Simon Prop. Group, Inc.*, 31 AD3d 382, 383 [2006] [citations omitted]; *see Lonner v Simon Prop. Group, Inc.*, 31 AD3d 398 [2006]; *see also SPGGC, LLC v Blumenthal* 505 F3d 183, 187-191 [2007] ["The Connecticut Gift Card Law prohibits the sale of any 'gift certificate' subject to inactivity or dormancy fees or to an expiration date . . . Gift

Law § 349. Within the context of the defendant's motion to dismiss the complaint as preempted by General Business Law § 396-i and pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, this Court, upon finding that the claims of the *Llanos* plaintiffs were not preempted by General Business Law § 396-i, remitted the matter for consideration of the merits of each cause of action.

certificates are defined to include gift cards and other stored-value cards . . . We have no difficulty concluding . . . that SPGGC has failed to state a valid claim for preemption of the Connecticut Gift Card Law insofar as it prohibits SPGGC from imposing inactivity and certain other fees on consumers of the Simon Giftcard . . . SPGGC, however, does state a valid claim for preemption insofar as the Connecticut Gift Card Law prohibits expiration dates"]). Accordingly, this Court remitted the matter for a determination of the merits of each cause of action.

## The Amended Complaint

The plaintiff filed an amended class action complaint, which identified the card as a gift certificate. The plaintiff alleged that she received the card from her employer in or about April 2003, that the card was sold at malls and through the Internet, and that Simon's "wrongful acts" were consumer-oriented and affected thousands of its customers. The amended complaint set forth five causes of action, and sought to recover damages for breach of contract based upon a breach of the implied covenant of good faith and fair dealing, unjust enrichment, money had and received, and violations of General Business Law §§ 349 and 396-i, the amended complaint also sought declaratory relief and injunctive relief enjoining and restraining Simon from "further applying and implementing the policies and acts complained of."

## Motion to Dismiss

Simon thereafter moved pursuant to CPLR 3211 (a) (1) and (7) to dismiss the amended complaint. The Supreme Court granted those branches of the motion which were to dismiss the causes of action to recover damages for violations of General Business Law §§ 349 and 396-i, the former for the plaintiff's failure to articulate the necessary elements of such a claim and the latter because the statute, as amended (L 2004, ch 170, § 1), applied only to gift cards that were issued after October 18, 2004, and not to the plaintiff's card, which was issued in or about April 2003. The court noted that the amended complaint did not expressly assert that the card was a "gift certificate" or "store credit" within the meaning of General Business Law § 396-i, as that statute defined those terms prior to the 2004 amendment (L 1997, ch 126, § 1). Further, the court determined that the "cause of action seeking the declaratory and injunctive relief is not appropriate in this case." However, the court ruled that the causes of actions to recover damages for breach of

contract and unjust enrichment, and to recover money had and received, were viable claims.

General Business Law § 349

■ The amended complaint alleges, inter alia, that the type size used by Simon is impermissibly small, that Simon failed to clearly and conspicuously disclose the terms of the dormancy fee, and that such conduct, combined with deceptive marketing, damaged the plaintiff. The foregoing allegations are sufficient to state a cause of action under General Business Law § 349 (*see Lonner v Simon Prop. Group, Inc.*, 57 AD3d 100 [2008]). As the Appellate Division, First Department, held in *Sims v First Consumers Natl. Bank* (303 AD2d 288, 289 [2003]),

> "[t]he gist of plaintiffs' deceptive practices claim [was] that the typeface and location of the fee disclosures, combined with high-pressure advertising, amounted to consumer conduct that was deceptive or misleading in a material way, causing plaintiffs damages for purposes of General Business Law § 349. Whether defendants' conduct was deceptive or misleading is a question of fact."

"Allegations of a bank's [or card issuer's] unilateral imposition of illegal and/or unwarranted fees upon its customers states a valid claim of consumer fraud" in violation of General Business Law § 349 (*Negrin v Norwest Mtge.*, 263 AD2d 39, 50 [1999]; *see Relativity Travel, Ltd. v JP Morgan Chase Bank*, 13 Misc 3d 1221[A], 2006 NY Slip Op 51926[U] [2006]).[2]

---

**2.** (*See also Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d 486 [2008].) In *Pludeman,* a class of small business owners who had entered into lease agreements for point-of-service computer terminals asserted that defendant used

> "deceptive practices, hid material and onerous lease terms. According to plaintiffs, defendants' sales representatives presented them with what appeared to be a one-page contract on a clipboard, thereby concealing three other pages below . . . [a]mong such concealed items [were a] . . . no cancellation clause, a no warranties clause, absolute liability for insurance obligations, a late charge clause, and provisions for attorneys' fees and New York as the chosen forum," all of which were in "small print" or "microprint" (*id.* at 489-490).

In sustaining the fraud cause of action against the individually-named corporate defendants, the Court noted that

> "it is the language, structure and format of the deceptive lease form and the systematic failure by the salespeople to provide each lessee a copy of the lease at the time of its execution that permits, at this early stage, an inference of fraud against the

General Business Law § 396-i

General Business Law § 396-i (3) provides that "[t]he terms and conditions of a gift certificate store credit shall be clearly and conspicuously stated thereon." In 2004 the definition of "gift certificate" was amended, and now provides:

> "For the purposes of this section, 'gift certificate' shall mean . . . electronic payment device that: (i) is usable at . . . multiple, unaffiliated merchants or service providers; and (ii) is issued in a specified amount; and (iii) may or may not be increased in value or reloaded; and (iv) is purchased and/or loaded on a prepaid basis for the future purchase or delivery of any goods or services; and (v) is honored upon presentation." (General Business Law § 396-i [1].)

The amendment applies to gift certificates sold or issued on and after the effective date, i.e., October 18, 2004.

The supporting memorandum of the Senate sponsor of the 2004 amendment stated, under the heading entitled "Purpose," that "[t]his legislation would clarify that the definition for gift certificates includes gift cards" (Senate Introducer Mem in Support, Bill Jacket, L 2004, ch 170, at 3; Senate Mem in Support, 2004 McKinney's Session Laws of NY, at 1709). In addition, the memorandum stated that "[w]hile gift certificate has always included gift cards, the definition is amended to reflect this practice" (Senate Introducer Mem in Support, Bill Jacket, L 2004, ch 170, at 3). Thus, the memorandum indicates that the amendment was not adding a new definition but, rather, clarifying an existing definition. Therefore, it is clear that General Business Law § 396-i applies to the gift card held by the plaintiff.

However, General Business Law § 396-i does not expressly provide a private right of action to enforce its terms.

> "When, as here, a statute does not provide an express private right of action, the courts will imply a private right of action only upon examination of the following three factors: '(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative

corporate officers in their individual capacity and not the sales agents" (*id.* at 493).

purpose; and (3) whether creation of such a right would be consistent with the legislative scheme' " (*Ahmad v Nassau Health Care Corp.*, 8 AD3d 512, 513 [2004], quoting *Sheehy v Big Flats Community Day*, 73 NY2d 629, 633 [1989]; *see People v Grasso*, 11 NY3d 64, 70-71 [2008]; *Pelaez v Seide*, 2 NY3d 186, 200 [2004]; *Uhr v East Greenbush Cent. School Dist.*, 94 NY2d 32, 38 [1999]; *Bhandari v Isis*, 45 AD3d 619, 621 [2007]).

"Avoiding unwarranted interference with the legislative scheme is the 'most critical' factor in determining whether a private cause of action may be fairly implied from the enactment of a statute" (*Hudes v Vytra Health Plans Long Is.*, 295 AD2d 788, 789 [2002], quoting *Mark G. v Sabol*, 93 NY2d 710, 720 [1999]). As the Court of Appeals has written, "[o]ur decisions have established that the most critical inquiry in determining whether to recognize a private cause of action where one is not expressly provided is whether such action would be consistent with the over-all legislative scheme" (*Brian Hoxie's Painting Co. v Cato-Meridian Cent. School Dist.*, 76 NY2d 207, 212 [1990]). "[A] private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme" (*Sheehy v Big Flats Community Day*, 73 NY2d at 634-635; *see People v Grasso*, 11 NY3d at 71). As stated by the Court of Appeals:

> "Where the Legislature has not been completely silent but has instead made express provision for civil remedy, albeit a narrower remedy than the plaintiff might wish, the courts should ordinarily not attempt to fashion a different remedy, with broader coverage, on the basis of a different statute, at least where, as here, the two statutes address the same wrong" (*Sheehy v Big Flats Community Day*, 73 NY2d at 636).

Thus, in *Pelaez v Seide* (2 NY3d at 201), the Court of Appeals found that the creation of a private right of action was inconsistent with the legislative scheme underlying the Lead Poisoning Prevention Act. The Court found that opening municipalities to liability for carrying out their duties imperfectly could result in a withdrawal or reduction in services in their attempts to address problems caused by the use of lead paint. Moreover, the Court found that the Legislature contemplated administrative oversight by municipalities, but that it intended owners of build-

ings containing lead paint hazards to bear the ultimate responsibility for compliance.

However, a private right of action "may at times further a legislative goal and coalesce smoothly with the existing statutory scheme" (*Uhr v East Greenbush Cent. School Dist.*, 94 NY2d at 40, citing *Doe v Roe*, 190 AD2d 463, 471 [1993] [a private cause of action for violation of Public Health Law § 2780 (6) is not inconsistent with the legislative scheme where it would be consistent with the common law and would merely provide an additional enforcement mechanism]). This Court has stated that where there is no regulatory agency to otherwise enforce compliance with a statute, "the recognition of a private right of action would do no harm" (*Negrin v Norwest Mtge.*, 263 AD2d at 48 [dealing with alleged violation of Real Property Law § 274-a with respect to residential mortgagors and their lenders]).

The Protected Class

With respect to the first *Sheehy* factor, the plaintiff is the holder of a gift card that allegedly contains terms and conditions that are not clearly and conspicuously stated thereon. Thus, the plaintiff is clearly among the class for whose particular benefit the statute was enacted.

Deterrence of Prohibited Conduct

Moreover, the plaintiff satisfies the second *Sheehy* factor. In directing that the terms and conditions of a gift card be clearly and conspicuously stated thereon, the Legislature intended to prevent merchants from attempting to deceive consumers by, among other things, charging hidden fees. A private right of action to recover civil damages for injuries sustained as a result of this prohibited conduct would act as a deterrent and thus would promote the legislative purpose (*see Sheehy v Big Flats Community Day*, 73 NY2d at 633). The Court in *Sheehy,* in determining whether a private right of action to recover damages existed under Penal Law former § 260.20 (4), a provision criminalizing the supply of alcoholic beverages to those under the legal purchase age, found that permitting a private right of action to recover civil damages for injuries arising from this prohibited conduct would further the legislative goal of deterrence. The policy considerations informing the decision in *Sheehy* apply with equal force here.

The Attorney General's Enforcement Powers

The third *Sheehy* factor requires an inquiry into whether the creation of a private right of action would be consistent with

the legislative scheme. The Attorney General is granted enforcement powers for violations of General Business Law § 396-i, including the authority to seek injunctive relief, restitution, and civil penalties (*see* General Business Law § 396-i [4]). The fact that this section does not provide a private right of action, but authorizes only the Attorney General to commence an action for a violation of its provisions, while other sections of the General Business Law expressly provide for a private right of action (*see e.g.* General Business Law § 349 [h]), suggests that recognition of an implied private right of action would be inconsistent with the legislative scheme.

In *Varela v Investors Ins. Holding Corp.* (81 NY2d 958 [1993]), the Court of Appeals held that "[i]nsofar as plaintiffs rely upon article 29-H of the General Business Law, which regulates debt collection practices, their claim fails because the article does not create a private cause of action, but authorizes only the Attorney-General or a District Attorney to commence an action for violation of its provisions" (*id.* at 961, citing General Business Law § 602 [2]). The Court concluded that

> "[g]iven the Legislature's action in amending article 22-A to expressly provide for a private cause of action in that article (*see,* General Business Law § 349 [h], added by L 1980, ch 346), its provision for private causes of action in other portions of the General Business Law (*see, e.g.,* arts 29-I, 30), and the absence of a similar provision for enforcing article 29-H . . . the Legislature did not intend to create a private cause of action for violations of article 29-H" (*id.*).

As one commentator explained it,

> "In 1980, New York amended its consumer protection act (Act) to provide a private right of action for injuries caused by consumer and business fraud. The Act, which declares unlawful 'deceptive acts or practices' and 'false advertising in the conduct of any business, trade or commerce or in the furnishing of any service' in New York State, now permits 'any person who has been injured by reason of any violation of the Act to bring an action in his own name to enjoin such unlawful act or practice and to recover his actual damages or fifty dollars, whichever is greater' . . .
>
> "Prior to the amendment, only the Attorney Gen-

eral was vested with the authority to enforce the Act's prohibitions against deceptive acts or practices and false advertising" (Moldovan, Note, *New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor*, 48 Brook L Rev 509, 509-510 [1982]).

Accordingly, recognition of a private right of action under General Business Law § 396-i would be inconsistent with the legislative scheme.

## Injunctive and Declaratory Relief

Although injunctive relief is an enumerated remedy under General Business Law § 349 (h), Simon contends that injunctive and declaratory relief are unwarranted where, as here, the plaintiff has an adequate remedy at law. In addition, Simon notes that it entered into a consent order with the Attorney General that resulted in a modification of the card's fee structure. Simon contends that the fee structure for all New York cards issued on or after October 18, 2004, complied with the applicable provisions of the General Business Law, and were no longer the subject of any complaint, including the amended complaint in the instant action. Thus, Simon argues, in effect, that the plaintiff's request for injunctive relief is academic.

■ Contrary to Simon's contention, the Supreme Court erred in granting those branches of its motion which were to dismiss the claims for injunctive and declaratory relief. The consent order only enjoined the collection of fees with respect to cards that were sold on or after October 18, 2004; it did not stop the collection of fees for cards sold prior to that date, such as the plaintiff's. Moreover, the amended complaint alleges that the dormancy fees are inadequately disclosed, which could warrant injunctive and declaratory relief. Accordingly, the Supreme Court should not have granted those branches of Simon's motion which were to dismiss the plaintiff's claims for injunctive and declaratory relief.

## Breach of Contract

■ The plaintiff has sufficiently stated a cause of action to recover damages for breach of contract based upon the breach of the implied warranty of good faith and fair dealing, arising from the alleged improper disclosure of dormancy fees. As the Court of Appeals explained in *Dalton v Educational Testing Serv.* (87 NY2d 384, 389 [1995]),

"[i]mplicit in all contracts is a covenant of good faith and fair dealing in the course of contract perfor-

mance . . .

"This embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion" (internal quotation marks and citation omitted; *see Lonner v Simon Prop. Group, Inc.*, 57 AD3d 100 [2008]; *Sims v First Consumers Natl. Bank.*, 303 AD2d at 290; *Englade v HarperCollins Publs.*, 289 AD2d 159 [2001]; *Broder v MBNA Corp.*, 281 AD2d 369 [2001]).

### CPLR 4544 Applies to a Business Gift

■ The defendant's arguments regarding violations of CPLR 4544 and unconscionability were, with one exception, previously addressed and rejected by this Court in *Lonner v Simon Prop. Group, Inc.* (57 AD3d 100 [2008]) and by the Appellate Division, First Department, in *Sims v First Consumers Natl. Bank* (303 AD2d 288 [2003]).

CPLR 4544 provides as follows:

"The portion of any printed contract or agreement involving a consumer transaction . . . where the print is not clear and legible or is less than eight points in depth or five and one-half points in depth for upper case type may not be received in evidence in any trial, hearing or proceeding on behalf of the party who printed or prepared such contract or agreement, or who caused said agreement or contract to be printed or prepared."

The defendant argues that because the card was given to the plaintiff by her employer, the card was purchased for a business purpose and did not involve a consumer transaction. Therefore, the defendant argues that the plaintiff cannot rely on CPLR 4544. We disagree.

CPLR 4544 applies to the portion of a written contract or agreement "involving a consumer transaction." The term "consumer transaction" is defined as "a transaction wherein the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes" (CPLR 4544). The card is a gift card, which is sold at malls and through the Internet. According to its terms, the card is a "gift" and may be used anywhere that Visa cards are accepted.

Initially, it is not clear from the amended complaint that the plaintiff's employer purchased the card for business purposes in the first instance. In any event, even though the plaintiff received the card from her employer, the ultimate intended use of the card was for the recipient to purchase consumer goods with it for personal, family, or household purposes. As a result, contrary to the defendant's contention, the agreement herein involves a "consumer transaction."

Unjust Enrichment/Money Had and Received

"The essence of unjust enrichment is that one party has received money or a benefit at the expense of another" (*City of Syracuse v R.A.C. Holding*, 258 AD2d 905, 906 [1999]). A cause of action for money had and received sounds in quasi contract and "arises when, in the absence of an agreement, one party possesses money that in equity and good conscience it ought not retain" (*Rocks & Jeans v Lakeview Auto Sales & Serv.*, 184 AD2d 502, 502 [1992]).

> "Although an action for money had and received 'is recognized as an action in implied contract, the name is something of a misnomer because it is not an action founded on contract at all; it is an obligation which the law creates in the absence of agreement when one party possesses money that in equity and good conscience he [or she] ought not to retain and that belongs to another' " (*Matter of Witbeck*, 245 AD2d 848, 850 [1997], quoting *Parsa v State of New York*, 64 NY2d 143, 148 [1984]).

Although the existence of a valid and enforceable contract governing a particular subject matter generally precludes recovery in quasi contract (*see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 388 [1987]; *Lum v New Century Mtge. Corp.*, 19 AD3d 558, 559-560 [2005]), where there is a bona fide dispute as to the existence of a contract or the application of a contract in the dispute in issue, a plaintiff may proceed upon a theory of quasi contract as well as breach of contract, and will not be required to elect his or her remedies (*see Hochman v LaRea*, 14 AD3d 653, 654-655 [2005]; *Zuccarini v Ziff-Davis Media*, 306 AD2d 404, 405 [2003]; *Old Salem Dev. Group v Town of Fishkill*, 301 AD2d 639 [2003]; *Parkash v Utilisave Corp.*, 295 AD2d 330 [2002]). Therefore, the plaintiff may properly plead unjust enrichment and money had and received as alternative claims to the breach of contract claim (*see Zuccarini v Ziff-Davis Media*, 306 AD2d 404 [2003]).

Accordingly, we reverse the order insofar as appealed from, on the law, affirm the order insofar as cross-appealed from, and those branches of the defendant's motion which were to dismiss the cause of action alleging a violation of General Business Law § 349 and the claims for injunctive and declaratory relief are denied.

SKELOS, J.P., RITTER and McCARTHY, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, and those branches of the defendant's motion which were pursuant to CPLR 3211 (a) (1) and (7) to dismiss the cause of action alleging a violation of General Business Law § 349 and the claims for injunctive and declaratory relief are denied; and it is further,

Ordered that the order is affirmed insofar as cross-appealed from; and it is further,

Ordered that one bill of costs is awarded to the plaintiff.