# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2078

_____

Patrick J. Lynch, as trustee of the Health and Welfare Fund and the Retiree Health
& Welfare Fund of the Patrolmen's Benevolent Association of the City of New
York and on behalf of all other similarly situated Plans

*Plaintiff - Appellant*

v.

National Prescription Administrators, Inc.; Express Scripts, Inc.; John Does, 1-25

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 13, 2015
Filed: May 27, 2015

_____

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

In 2002, Express Scripts, Inc. (ESI) acquired National Prescription
Administrators, Inc. (NPA). In 2003, two health Funds of a police union brought a
class action against ESI and NPA. In 2004, the New York Attorney General (AG)
sued ESI, resulting in a consent judgment. Based on that consent judgment, ESI

moved for summary judgment in the Funds' suit. The district court granted ESI's motion, applying res judicata. The Funds appeal. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

## I.

The Patrolmen's Benevolent Association of the City of New York, Inc. is a union of active and retired New York City police officers. It created the Funds as private trusts to provide prescription drug benefits to its members "in every state of the United States except South Dakota." The trustees are union officers who administer those benefits with money gained by collective bargaining with New York City.

NPA provided pharmacy-benefit-management services to the Funds through July 2002. Alleging various common law and statutory claims, the Funds brought their class action in federal court on behalf of "all current and former self-funded non-ERISA employee benefit Plans for which NPA and/or Express Scripts serve or have served as the Plan's PBM." The Funds never contracted with ESI. The action was transferred to multi-district litigation in the Eastern District of Missouri.

In 2004, the AG sued ESI in New York state court, alleging ESI breached its contract with the "Empire Plan," the State's main employee health plan. According to the complaint's preamble, it was brought by "The People of the State of New York, by their attorney," the AG. In Paragraph 27, the AG specified the bases for its suit:

> Plaintiffs commence this action pursuant to: (1) Executive Law § 63(1), under which the Attorney General is empowered to prosecute and defend all actions and proceedings in which the State of New York is interested; (2) Executive Law § 63(12), under which the People of the State of New York, by the Attorney General of the State of New York, are empowered to seek injunctive relief, restitution, damages and costs

against any person or business entity that has engaged in repeated fraudulent or illegal acts or otherwise engaged in persistent fraud or illegality in the conduct of a business; and (3) General Business Law ("GBL") Article 22-A, under which the People of the State of New York, by the Attorney General of the State of New York, are authorized to seek injunctive relief, restitution and civil penalties against any person or business entity which has engaged in deceptive acts or practices or false advertising in the conduct of business.

For relief, the AG requested: an injunction against illegal activities that "relate to the Empire Plan, other non-ERISA health and prescription drug benefit plans of the State and its political subdivisions, and members of such plans"; damages payable to the Department of Civil Service (DCS), which administers the Empire Plan, and to "the State of New York" for breach of contract, unjust enrichment, and other theories; and, damages and restitution for "injured members of the Empire Plan and other non-ERISA health and prescription drug benefit plans of the State and its political subdivisions."

In 2005, the New York state court stayed the AG's suit until two other cases were resolved. In a motion to vacate the stay, the AG said it sued ESI "on behalf of the Empire Plan (by DCS, as administrator of the plan, and the State, which pays the majority of the premiums . . .), other New York government plans, as well as Empire Plan members." In that motion, the AG said it sought "to protect . . . members of other government health plans (i.e., counties and municipalities that contract with ESI)."

In 2008, the AG and ESI entered into a consent judgment. In exchange for injunctive relief and $27 million, the AG released ESI from certain claims and causes of action.

ESI then moved for summary judgment in the Funds' suit, arguing the consent judgment "is res judicata and bars [their] claims." The district court granted ESI's motion, applying res judicata. The Funds appeal.

## II.

This court reviews de novo a grant of summary judgment. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**.

The Full Faith and Credit Act "directs all courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state." *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996), *citing* **28 U.S.C. § 1738**. This court reviews de novo the application of res judicata. *Daley v. Marriott Int'l, Inc.*, 415 F.3d 889, 895 (8th Cir. 2005). New York preclusion law governs this case. *See* *Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1043 (8th Cir. 1997) ("[T]he res judicata effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum." (internal quotation marks omitted)).

"In New York, res judicata, or claim preclusion, bars successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008) (internal quotation marks and citation omitted). "In properly seeking to deny a litigant two 'days in court,' courts must be careful not to deprive him of one." *Reilly v. Reid*, 379 N.E.2d 172, 175 (N.Y. 1978). "We remain mindful that if applied too rigidly, res judicata has the potential to work considerable

-4-

injustice." ***Landau, P.C. v. LaRossa, Mitchell & Ross***, 892 N.E.2d 380, 384 (N.Y. 2008).

"Claim preclusion, like issue preclusion, is an affirmative defense." ***Taylor v. Sturgell***, 553 U.S. 880, 907 (2008). "Ordinarily, it is incumbent on the defendant to plead and prove such a defense, and we have never recognized claim preclusion as an exception to that general rule." ***Id.*** (citations omitted).

The consent judgment is a final judgment on the merits. *See* ***Silverman v. Leucadia, Inc.***, 548 N.Y.S.2d 720, 721 (App. Div. 1989) ("[A] judgment on consent is conclusive and has the same preclusive effect as a judgment after trial."). ESI argues that res judicata applies because the Funds sued on the same transactions as the AG and because the Funds were in privity with the AG.

This court first analyzes privity. "Generally, to establish privity the connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding." ***Green v. Santa Fe Indus., Inc.***, 514 N.E.2d 105, 108 (N.Y. 1987).

The district court found privity because the AG's suit, "brought on behalf of the People, the Plans and the members thereof, is clearly the essence of the [Funds] . . . and sought what [the Funds] herein seek to accomplish." ESI asks this court to affirm because the AG "alleged claims on behalf of the" Funds.

The Funds were not parties to the AG's suit, nor did the AG allege claims on their behalf. The AG sought relief for three categories of entities: the Empire Plan (and its members); DCS and the State (as Empire Plan administrator and premium-payer, respectively); and "other New York government plans," that is, "counties and municipalities that contract with ESI," and their members. Only the third category is disputed. While the parties agree the Funds are "governmental plans" for purposes

-5-

of ERISA, *see* 29 U.S.C. § 1003(b)(1), the AG did not purport to represent all § 1003(b)(1) "governmental plans." The AG said "other New York government plans" means "counties and municipalities that contract with ESI." The Funds did not contract with ESI; and the Funds are neither a county nor a municipality. They are private trusts. Their trustees are union officers, not city officials with whom they bargain. These trustees, not the city, sued on the Funds' behalf. Any recovery is the Funds', not the city's.

Alternatively, ESI asserts privity because the AG sued ESI in a *parens patriae* capacity. "*Parens patriae* is a common-law standing doctrine that permits the state to commence an action to protect a public interest, like the safety, health or welfare of its citizens." *People ex rel. Spitzer v. Grasso*, 893 N.E.2d 105, 107 n.4 (N.Y. 2008). "To invoke the doctrine, the Attorney General must prove a quasi-sovereign interest distinct from that of a particular party and injury to a substantial segment of the state's population." *Id.*, citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982) (noting "a State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general"). "The State must express a quasi-sovereign interest." *Snapp & Son*, 458 U.S. at 607.

Nothing in this court's record indicates the AG invoked *parens patriae* authority. *See Grasso*, 893 N.E.2d at 107 n.4. The words "parens" or "patriae" are not used in the complaint, vacate-stay motion, or consent judgment. The AG did not *express* a quasi-sovereign interest. *See Snapp & Son*, 458 U.S. at 607. The complaint uses "sovereign" once—to identify "Plaintiff State of New York" as "the sovereign State of New York with its principal offices" in Albany. The AG used "quasi" once—in the vacate-stay motion, to refer to some of the AG's claims against ESI as "quasi-contract" (for example, its unjust-enrichment claim). The AG did not say it represented "its residents in general." *See id.* Rather, the AG claimed to represent only the Empire Plan (and its members), DCS and the State (as administrator and premium-payer, respectively), and "counties and municipalities that

-6-

contract with ESI." The complaint does not discuss the substantiality of any injured "segment of the state's population," although it alleged the Empire Plan covers over one million active and retired employees. *See Grasso*, 893 N.E.2d at 107 n.4.

True, *parens patriae* power is "inherent in the supreme power of every State." ***Snapp & Son***, 458 U.S. at 600, *quoting **Mormon Church v. United States***, 136 U.S. 1, 57 (1890). But it does not follow that the AG always acts in that capacity when it sues. To the contrary, in New York, *Grasso* requires an affirmative invocation: "*To invoke* the doctrine, the Attorney General *must prove* . . . ." *See **Grasso***, 893 N.E.2d at 107 n.4 (emphases added). *See also **Snapp & Son***, 458 U.S. at 607 ("The State *must express* a quasi-sovereign interest." (emphasis added)); ***Massachusetts v. E.P.A.***, 549 U.S. 497, 538 (2007) ("[P]*arens patriae* actions raise an additional hurdle for a state litigant: the *articulation of* a 'quasi-sovereign interest.'" (Roberts, C.J., dissenting) (emphasis added) (quoting ***Snapp & Son***, 458 U.S. at 607)).

In other cases, the New York AG's pleadings invoking *parens patriae* satisfy these precedents. For example, in *People ex rel. Spitzer v. Town of Wallkill*, the AG claimed the "*parens patriae* authority to commence" the action, specified the State's "quasi-sovereign interest," and stated that "a significant number of citizens of the State of New York [] will be unable to vindicate their rights absent action by the Attorney General." Complaint at 4, ***People ex rel. Spitzer v. Town of Wallkill***, No. 01-Civ-0364, (S.D.N.Y. Jan. 18, 2001), http://www.ag.ny.gov/sites/default/files/press-releases/archived/wallkill_complaint.pdf.

The authority the AG invoked is in Paragraph 27 of its complaint. Instead of invoking *parens patriae* authority, the AG specified three statutory bases: Executive Law § 63(1), Executive Law § 63(12), and GBL Article 22-A. ESI cites no New York authority that these statutes codify *parens patriae*. Nor does the statutes' plain language reference or invoke *parens patriae*. *Cf.* ***In re Lorazepam & Clorazepate Antitrust Litig.***, 205 F.R.D. 369, 386 (D.D.C. 2002) (stating, in national summary of

state-attorneys-general power, that § 63(12) provides New York with "express statutory authority to represent consumers in a capacity which is the functional equivalent of *parens patriae*") (not cited for this proposition by any New York court). Under § 63(1), the AG must "[p]rosecute and defend all actions and proceedings in which the state is interested." Section 63(12) permits the AG to sue "in the name of the people of the state of New York" for "repeated fraudulent or illegal acts." Similarly, § 349(b) of Article 22-A permits the AG to sue "on behalf of the people of the state of New York" for deceptive acts or practices. Exercising statutory authority to sue "in the name" and "on behalf of the people of the state of New York" does not necessarily *prove* or *express* a quasi-sovereign interest. *See **Grasso***, 893 N.E.2d at 107 n.4; ***Snapp & Son***, 458 U.S. at 607.

On appeal, the Funds make various arguments about *parens patriae* authority, but they have not responded specifically to ESI's claim that the AG acted as *parens patriae* when suing ESI.[1] At oral argument, the Funds said the AG "sue[d] on behalf of, quote, the State of New York and the people of New York. When you do that, you are suing under *parens patriae*." ESI argues the Funds have conceded that the AG acted as *parens patriae*.

Res judicata is ESI's affirmative defense, and "it is incumbent on [ESI] to . . . prove such a defense." *See **Taylor***, 553 U.S. at 907. The Funds' (mistaken) position on *parens patriae* does not prove ESI's defense. *See **Gander v. Livoti***, 250 F.3d 606, 609 (8th Cir. 2001) ("The law is clear that stipulations of law are not binding on the court.").

---

[1]The district court did not expressly reach ESI's *parens patriae* argument. But the court apparently considered it, based on ESI's quotation of the "statutory bases" in its motion for summary judgment. The court, which excerpted § 63(1) and § 349(b), found "the AG represented the People of the State of New York" and found ESI "established that the [AG] was vested with the authority to act on [the Funds'] behalf."

This court is "mindful" that res judicata can "work considerable injustice," *Landau*, 892 N.E.2d at 384, and is "careful not to deprive" the Funds of their day in court, *Reilly*, 379 N.E.2d at 175. Accordingly, this court holds ESI to its burden of proving that the AG sued ESI as *parens patriae*. On this record, ESI has not met its burden.

Because ESI has not shown privity between the Funds and the AG, this court need not analyze the transactions underlying the two suits. The district court erred in applying res judicata.

## III.

The parties dispute whether the release language bars the Funds' claims. The district court did not reach this issue. Generally, "a federal appellate court does not consider an issue not passed upon below." **Singleton v. Wulff**, 428 U.S. 106, 120 (1976). "Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt or where injustice might otherwise result." **Ames v. Nationwide Mut. Ins. Co.**, 760 F.3d 763, 770 (8th Cir. 2014), *quoting* **Singleton**, 428 U.S. at 121. Neither party argues for any exception to the waiver rule. This court declines to decide whether the release language bars the Funds' claims.

\* \* \* \* \* \* \*

The judgment is reversed, and the case remanded for proceedings consistent with this opinion.

_____