**Donna BINETTI, On Behalf of Herself and All Others Similarly Situated, Plaintiffs,**

v.

**WASHINGTON MUTUAL BANK, f/k/a Washington Mutual Bank, FA, Defendant.**

**No. 06 CIV. 1732(CM).**

United States District Court, S.D. New York.

Aug. 3, 2006.

---

would lend Ms. Binetti $124,000.00 with interest to be assessed "as provided in the note." The Note, also dated October 24, 2002, provided that interest would be charged "on [the] unpaid principal until the full amount of principal has been paid," at a yearly rate of 5.500%. The contract did not indicate that Ms. Binetti would be charged interest beyond the date she paid off her loan, or that she would be unable to sell her co-op unless she paid certain extra-contractual charges. Nevertheless, when Ms. Binetti sold her co-op three years later, the Bank charged her interest for three days after her November 18, 2005 closing. As a result, Ms. Binetti was forced to pay $47.00 in additional interest charges.

Plaintiff brings this action against the Bank for breach of contract, unjust enrichment, and violation of General Business Law § 349 (New York's Consumer Fraud Statute), on behalf of herself and all other borrowers (both in New York and nationwide) who obtained and then terminated co-op loans originated or held by defendant, and whom defendant assessed with impermissible interest charges beyond the termination date of the loans.

Defendant moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), on the ground that plaintiff's claims are preempted by federal law. Specifically, defendant argues that, pursuant to the Home Owners' Loan Act of 1933 ("HOLA"), the Office of Thrift Supervision ("OTS") has "authority [that] is preemptive of any state law purporting to address the subject of the operations of a Federal savings association." 12 C.F.R. § 545.2; *see also Flagg v. Yonkers S & L Ass'n*, 396 F.3d 178, 181 (2d Cir.2005).

Steven Lance Wittels, Sanford Wittels & Heisler, LLP, New York City, for Plaintiff.

Lisa M. Simonetti, Stroock & Stroock & Lavan, LLP, Los Angeles, CA, Heidi Balk, Stroock & Stroock & Lavan LLP, New York City, for Defendant.

## MEMORANDUM ORDER AND DECISION DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIM UNDER GENERAL BUSINESS LAW § 349

MCMAHON, District Judge.

On August 30, 2002, Plaintiff Donna Binetti applied for a co-op loan with Defendant Washington Mutual Bank ("the Bank" or "Washington Mutual") in order to refinance her cooperative apartment located in Bronx, New York. On October 24, 2002, she entered into a "Loan Security Agreement" with the Bank, which provided, *inter alia*, that Washington Mutual

On August 2, 2006, the Court heard arguments on defendant's motion. The Court concluded that plaintiff's breach of

contract claim is not preempted by federal law, and thus denied defendant's motion with respect to both that claim and plaintiff's wholly-derivative unjust enrichment claim.[1] The Court reasoned that it does not follow, from the fact that New York law would be applied to interpret plaintiff's contract claim, that a state-imposed regulation is being enforced. Indeed, New York law did not dictate the terms of the contract at issue, or require the parties to enter into it. Furthermore, the Court found it persuasive that, in the absence of an analogous federal cause of action, the Bank would be completely insulated from liability for its breach if the Court were to find plaintiff's claim preempted.

Presented with apparently inconsistent OTS opinions regarding the preemptive effect of federal law on state consumer fraud statutes, the Court reserved judgment on defendant's motion to dismiss plaintiff's claim for violation of General Business Law § 349. The Court now denies defendant's motion with respect to this cause of action.

Pursuant to 12 C.F.R. § 560.2(a), OTS "occupies the entire field of lending regulation for federal savings associations." However, OTS makes an exception for, *inter alia,* state contract and commercial laws which only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purpose of the regulation. 12 C.F.R. § 560.2(c)(1).

■ Plaintiff, arguing that the impact of the New York statute on lending relationships is only incidental and thus that it falls into § 560.2(c)(1)'s commercial law exception, points to a December 24, 1996, OTS opinion, which concluded that federal law does not preempt the Indiana Deceptive Acts and Practices statute ("DAP"). Defendant, countering that the statute has more than an incidental impact on lending activities, relies on a March 10, 1999, OTS opinion, in which OTS concluded that federal law preempts the manner in which certain provisions of the California Uniform Competition Act ("UCA") have been applied.

While seemingly inconsistent, the Court finds, upon further review, that the two opinions are not in conflict. Indeed, they both support plaintiff's position that the New York Consumer Fraud Statute is not preempted.

In the 1996 opinion, OTS expressly declared that "nothing in federal law preempts general deceptive practices statutes." 1996 OTS LEXIS 25, *17 (Dec. 24, 1996). Accordingly, OTS concluded that the Indiana DAP falls within the category of traditional "contract and commercial law" under § 560.2(c)(1). "While the DAP may affect lending relationships," OTS reasoned, "the impact on lending appears to be only incidental to the primary purpose of the statute the regulation of the ethical practices of all businesses engaged in commerce in Indiana." *Id.* Moreover,

> There is no indication that the law is aimed at any state objective in conflict with the safe and sound regulation of federal savings associations, the best practices of thrift institutions in the United States, or any other federal objective identified in § 560.2(a). In fact, because federal thrifts are presumed to interact with their borrowers in a truthful manner, Indiana's general prohibition on deception should have no measurable impact on their lending operations. *Id.*

---

1. The Court also rejected defendant's contention (which was raised for the first time on July 28, 2006, at a conference in this matter) that plaintiff failed to state a viable breach of contract claim based on the terms of the contract (i.e. the Note).

Like the Indiana DAP, the New York Consumer Fraud Statute, which declares unlawful "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state," is not directly aimed at lenders, and has only an incidental impact on lending relationships. *See* McKinney's Gen. Bus. Law § 349(a). Additionally, there is nothing in the record to suggest that the New York statute is in conflict with the federal objectives identified in § 560.2. Indeed, the New York Consumer Fraud Statute is precisely the type of general commercial law designed to "establish the basic norms that undergird commercial transactions" that OTS has indicated it does not intend to preempt. 1996 OTS LEXIS 25, *17.

The 1999 OTS opinion does not alter this conclusion. In that opinion, OTS declared that federal law preempts the application of certain provisions of the California UCA to three specific areas of lending operations, including advertising, forced placement of hazard insurance, and the imposition of certain loan-related fees. However, OTS bent over backwards to distinguish the opinion from its 1996 opinion, and to limit the scope of the opinion to the very "narrow circumstances" presented.

While recognizing that the UCA, like the Indiana DAP, "may [ ] be viewed as a form of contract and commercial law under § 560.2(c)," OTS stated, "In our view the situation [presented in the 1999 opinion] is distinguishable from the issues and facts addressed in the 1996 Opinion because the application of the UCA in the circumstances [ ] describe[d] seeks to set very particular requirements on the Associations' lending operations." 1999 OTS LEXIS 4, *25 (March 10, 1999). OTS recognized that, in a number of lawsuits, plaintiffs had used the UCA to require particular lending disclosures, limit the As-

sociations' choice of insurers and cap certain fees. Accordingly, "The UCA has been and is being used, by private and governmental parties, in an attempt to set substantive standards for the Associations' lending operations and practices." *Id.* at *26–27. This has resulted in "a great deal of uncertainty in how the lenders should structure and operate their lending programs to comply with the UCA." *Id.* at *35.

"As such, under § 560.2(c), the application of the UCA as described above has more than an incidental impact on the Associations' lending activities and is contrary to the purpose of uniform standards of operations." *Id.* at 25.

Of critical importance, is OTS's emphasis on "the extremely limited nature of our preemption determination here." OTS expressly stated,

Our finding of preemption is only based on how the UCA has been used by private and governmental plaintiffs to set standards in the three specific areas of a thrift's lending operations discussed herein, areas that have traditionally been governed by federal law. We do not preempt the entire UCA or its general application to federal savings associations in a manner that only incidentally affects lending and is consistent with the objective of allowing federal savings associations to operate in accordance with uniform standards. *Id.* at 37.

There is no indication in the record that the New York Consumer Fraud Statute has been used, by filing lawsuits or otherwise, to set substantive standards or establish particular requirements for lending operations in the state of New York. In the absence of such evidence, I cannot conclude that the narrow scope of OTS's 1999 opinion mandates dismissal of this claim. Rather, based on the language of the statute and the record before the

Court, § 349 of the General Business Law appears to belike the Indiana DAPa commercial statute of general applicability which, while having an incidental impact on lending relationships, is excepted from OTS preemption under § 560.2(c). This conclusion is consistent with the general notion that preemption is not a preferred defense and that courts are to exercise caution in finding state statutes preempted by federal law. *See, e.g., New York State Dep't of Soc. Serv. v. Dublino,* 413 U.S. 405, 413, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973).

Defendant's claim that the New York Consumer Fraud Statute has more than an incidental effect on lending operations misreads or misconstrues the nature of the "incidental" aspect of § 560.2(c). As should be clear from the foregoing, the question is whether any impact on lending operations is incidental to *the statute's* primary purpose not whether the impact of the statute on a bank's lending operation is "incidental" (which, for defendant, seems to mean *de minimis* ). Even if defendant's reading of the exception were correct, there is nothing in the record that would allow me to conclude that charging three days additional interest on a loan had more than a *de minimis* impact on Washington Mutual's lending operations.

For the foregoing reasons defendant's motion to dismiss plaintiff's claim under the New York Consumer Fraud Statute is denied.

This constitutes the decision and order of the Court.