OPINION OF THE COURT
Ira B. Warshawsky, J.
Preliminary Statement
This class action surrounds allegedly illegal fees that U.S. Bank and Simon Property Group have assessed to plaintiffs gift card purchased from the defendants. The defendants move to dismiss on the ground that all claims against them are precluded under the Supremacy Clause by the federal regulation of banks chartered under the National Bank Act. Because the defendants limit their arguments to the issue of federal preemption, the court does not consider whether each of plaintiffs causes of action independently states a valid legal claim, but only whether plaintiffs allegations state any cognizable cause for relief in light of the preemption doctrine.
Background
Defendant U.S. Bank is a national bank chartered pursuant to the National Bank Act (12 USC § 22 et seq.). U.S. Bank issues prepaid, stored-value Visa gift cards which it markets through its own efforts as well as through Simon Property Group. Simon Property Group in turn sells these gift cards in its stores as well as through its Web sites. U.S. Bank avers that it alone controls the terms of these cards, is solely liable for their value, and it handles all inquiries, complaints, and customer assistance by a 24-hour service. These cards have a prepaid, electronically stored value which can be used in any store or location in the Visa network which accepts debit cards, including locations not associated with Simon Property Group.
*289 The gift cards at issue are sold with disclosures prepared by U.S. Bank. These disclosures are as follows: a sticker on the front of the card describes dormancy, replacement and renewal fees and it draws attention to the expiration date; the back of the card again notes existence of dormancy, replacement, renewal fees, and an expiration date, and it refers holder to terms and conditions; and a multi-page “sleeve” attached to the card contains all terms and conditions relating to the gift card.
The plaintiff alleges that she received a gift card that had been purchased from a Simon Group mall with an original balance of $50. The card was subject to an “expiration date” of January 1, 2009. Although she had never used her card, the balance of the card had been reduced to $22.50 at the time of expiration due to the operation of monthly “dormancy fees.” After the expiration of the card, dormancy fees continued to be assessed until April 1, 2009, yielding an account balance of $12.50. U.S. Bank then charged an “account closure fee” of $12.50 on April 3, 2009. The complaint alleges causes of action premised on breach of contract, implied covenant of good faith and fair dealing, General Business Law § 349, indebtedness, and unjust enrichment. Plaintiffs causes of action broadly allege that defendants’ conduct in failing to provide more complete disclosures in accordance with CPLR 4544 and failure to permit the escheatment of the remaining balance at the expiration date constitute deceptive and wrongful business practices.
Standard
The defendants move to dismiss under CPLR 3211 (a) (7) for failure to state a cause of action, and CPLR 3211 (a) (1) because there is a complete defense founded on documentary evidence. As a preliminary matter, the court notes that the defendants make the same arguments and submit the same proof with respect to CPLR 3211 (a) (1) and (7). While some proof consists of copies of the bank’s disclosures, most of the proof regarding the nature of U.S. Bank’s gift card program is made by personal affidavit. Personal affidavits are not “documentary evidence” of the sort that was intended by CPLR 3211 (a) (1), since the paragraph could otherwise become a vehicle for dismissal on any ground that could be founded on an affidavit. Proper documentary evidence for a motion under CPLR 3211 (a) (1) must be valid on its face and directly prove a defense as a matter of law. (Stein v Garfield Regency Condominium, 65 AD3d *290 1126 [2d Dept 2009].) Therefore, the court considers defendants’ motion only under CPLR 3211 (a) (7). When determining a motion to dismiss for failure to state a cause of action, the pleadings must be afforded a liberal construction and the court must determine only whether the plaintiff has a cause for relief under any cognizable legal theory. (Uzzle v Nunzie Ct. Homeowners Assn., Inc., 70 AD3d 928 [2d Dept 2010].) Thus, a pleading will not be dismissed for insufficiency merely because it is inartistieally drawn; rather, such pleading is deemed to allege whatever can be implied from its statements by fair and reasonable intendment. (Brinkley v Casablancas, 80 AD2d 441 [1st Dept 1981].) Conversely, allegations that state only legal opinions or conclusions, rather than factual statements, are not afforded any weight. {Asgahar v Tringali Realty, Inc., 18 AD3d 408 [2d Dept 2005].)
The plaintiff has no burden to produce documentary evidence supporting the allegations in the complaint in order to oppose a motion to dismiss under CPLR 3211 (a) (7). {Stuart Realty Co. v Rye Country Store, 296 AD2d 455 [2d Dept 2002].) However, if the movant introduces evidence that “flatly contradices]” the plausibility of allegations in the complaint, the court no longer presumes the validity of those allegations {Asgahar v Tringali Realty, Inc., 18 AD3d 408, 409 [2005]), and the court then examines “whether or not a material fact claimed by the pleader is a fact at all and whether a significant dispute exists regarding it.” {Doria v Masucci, 230 AD2d 764, 765 [2d Dept 1996].) Also, the plaintiff can introduce documentary evidence to show that the allegations in the complaint are supportable with further proof. (CPLR 3211 [c], [e]; Rovello v Orofino Realty Co., 40 NY2d 633 [1976].) When the plaintiff offers such proof in response to a motion to dismiss, the standard “is whether the proponent of the pleading has a cause of action, not whether he has stated one.” {Leon v Martinez, 84 NY2d 83, 88 [1994].)
Discussion
The defendants contend that federal law preempts the causes of action alleged in the present class action complaint, because defendant U.S. Bank is federally regulated under the National Bank Act and any liability by defendant Simon Property Group is contingent upon U.S. Bank’s liability. Several federal District Courts have addressed precisely the same question raised in this matter and those courts have agreed that “nothing in federal law preempts general deceptive practices *291 statutes.” (Binetti v Washington Mut. Bank, 446 F Supp 2d 217, 219 [SD NY 2006]; Baldanzi v WFC Holdings Corp., 2008 WL 4924987, *2, 2008 US Dist LEXIS 95727, *4 [ED NY 2008]; see also Mwantembe v TD Bank, N.A., 669 F Supp 2d 545 [ED Pa 2009]; Green v Charter One Bank, N.A., 640 F Supp 2d 998 [ND Ill 2009]; see generally George Blum Annotation, Regulation of Pre-Paid Stored-Value “Gift Cards,” 46 ALR6th 437 [2009].) This court agrees, and defendants’ motion to dismiss on the ground of preemption is therefore denied.
As a starting point, the National Bank Act and federal law do not regulate national banks exclusively such that all state laws that might affect a national bank’s operations are preempted, as would be the case in field preemption. Rather, only those state laws that specifically conflict with the National Bank Act’s regulation of national banks are preempted.[1] This system comports with “Congress’s decision not to pre-empt substantive state law [and] [it] echoes many other mixed state/federal regimes in which the Federal Government exercises general oversight while leaving state substantive law in place.” (Cuomo v Clearing House Assn., L.L.C., 557 US —, —, 129 S Ct 2710, 2718 [2009].) Thus, “[f]or example, state usury laws govern the maximum rate of interest national banks can charge on loans, contracts made by national banks are governed and construed by State laws, and national banks’ acquisition and transfer of property [are] based on State law.” (Watters v Wachovia Bank, N. A., 550 US 1, 11 [2007] [citations and internal quotation marks omitted].)
While the defendants make much of the fact that issuing stored-value cards is an established “incidental power” of national banks (12 CFR 7.5002 [a] [3]) and the U.S. Supreme Court has articulated that it has “interpret[ed] grants of both enumerated and incidental powers to national banks as grants of authority not normally limited by, but rather ordinarily preempting, contrary state law” (Barnett Bank of Marion Cty., N. A. v Nelson, 517 US 25, 32 [1996]), the U.S. Supreme Court has substantially clarified and limited this language in subsequent cases. With regard to such enumerated and incidental powers, “States are permitted to regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank’s or the national bank regulator’s exercise of its powers.” (Watters, 550 US at 12 [emphasis *292 added].) In this light it should be noted that the Office of the Comptroller of the Currency (OCC), which regulates national banks, has also stated in its regulations that laws of general applicability, such as state laws relating to contract, tort, criminal law, and transfers of property are not preempted. (12 CFR 7.4009.)
The class action complaint in this matter alleges causes of action that are predicated on state law of general applicability. The defendants are wrong to rely upon SPGGC, LLC v Ayotte (488 F3d 525 [1st Cir 2007]). That case concerned a New Hampshire statute which sought to directly regulate stored-value gift cards that were issued by national banks, and the state statute forbade banking activities that had been expressly authorized by the OCC’s regulations. The narrow holding of Ayotte has already been distinguished by the Second Circuit in SPGGC, LLC v Blumenthal (505 F3d 183 [2d Cir 2007]), where a similar state statute sought to regulate stored-value gift cards but the statute was applied to a subsidiary of Simon Property Group, which is not a national bank. New York’s Appellate Division has also issued holdings that are factually distinguishable from Ayotte in Lonner v Simon Prop. Group, Inc. (31 AD3d 398 [2d Dept 2006]) and Goldman v Simon Prop. Group, Inc. (58 AD3d 208 [2d Dept 2008]), because the party in interest was not a national bank. While the present matter admittedly involves stored-value cards issued by a federally-chartered national bank, Ayotte is plainly distinguishable given that the causes of action at issue do not seek to enforce a state law that prohibits banking activities that are expressly authorized by federal regulation.
Further, there is little evidence that “the New York Consumer Fraud Statute has been used, by filing lawsuits or otherwise, to set substantive standards or establish particular requirements for [issuance of stored-value cards] in the state of New York.” (Binetti, 446 F Supp 2d at 220.) Therefore, there is no reason to conclude that General Business Law § 349 as applied to stored-value cards which are issued by national banks would substantially interfere with or impair the OCC’s ability to regulate the operations of national banks. While OCC regulations sanction and permit stored-value gift cards, the OCC has not set any regulations regarding any required disclosures. In the absence of regulation, state substantive law fills the void, such as it would in other areas occupied by “mixed state/federal regimes.” *293 In fact, there is little evidence that the OCC would not recognize application of state law of general applicability in this area.[2]
The defendants strenuously argue that “resolving any of these theories in Ms. Sheinkin’s favor would significantly interfere with U.S. Bank’s authorized power to charge such fees in conjunction with its gift card program, and to determine their proper amount.” But, plainly, national banks do not operate in a legal void in the absence of OCC regulation, even when a banking activity involves an expressly enumerated power. Thus, usury laws are not preempted even though national banks have an express lending power. (Watters, 550 US at 11.) As another court has aptly noted, “[s]imply put, there is a difference between challenging a national bank’s power to do something and challenging the manner in which it is done.” (Baptista v JP Morgan Chase Bank N.A., 2010 WL 2342436, 2010 US Dist LEXIS 55488 [MD Fla, June 4, 2010], affd sub nom. Baptista v JPMorgan Chase Bank, N.A., 640 F3d 1194 [11th Cir 2011].) Indeed, as has been held numerous times, “contracts made by national banks are governed and construed by State laws.” {Watters, 550 US at 11 [internal quotation marks omitted].) The causes of action alleged in the class action complaint regard contracts made and entered into by defendant U.S. Bank.
In the context of similar claims in a gift-card program in which Simon Property Group issued and controlled the terms of stored-value cards, the Appellate Division, Second Department, already had occasion to consider whether facts relating to small-print disclosures and dormancy and cancellation fees stated causes of action under CPLR 4544, General Business Law § 349, and the implied covenant of good faith and fair dealing. {Lonner v Simon Prop. Group, Inc., 57 AD3d 100 [2d Dept 2008].) The Second Department held that those causes of action were validly *294 stated where the disclosures regarding fees associated with the cards were only disclosed in small-print which did not comport with CPLR 4544. (Cf. Binetti v Washington Mut. Bank, 446 F Supp 2d 217 [2006].)
The defendants’ motion to dismiss the complaint is denied.

. The states’ superintendence of national banks, which of course is not at issue here, is expressly preempted, however. (12 USC § 484 [a].)

. Addressing a Connecticut statute which prohibited certain fees and practices in connection with gift cards issued by a subsidiary of Simon Property Group, the Second Circuit noted that
“the OCC does not view the regulation of SPGGC’s collection of fees as an encroachment on [Bank of America]’s power, stating specifically in its amicus brief that ‘we do not believe that the state restrictions on Simon charging a monthly service fee in connection with the gift cards would burden or interfere with national bank powers to issue stored-value cards as a payment mechanism.” (SPGGC, LLC v Blumenthal, 505 F3d 183, 190-191 [2007].)
However, it is unclear how the OCC would view the application of state laws of general applicability to stored-value gift cards issued and controlled by national banks.